JOAQUÍN MÁRQUEZ, ET ALS., demandantes y apelados, *v.* JUNTA INSULAR DE ELECCIONES, demandada y apelante y MANUEL PEREYÓ, ET ALS., interventores y apelantes.

No. 4928.—*Sometido:* Noviembre 15, 1929.  *Resuelto:* Mayo 23, 1930.

*E. Martínez Nadal* y *Bolívar Pagán,* abogados de los interventores apelantes; *Honorable Attorney General James R. Beverley* y *Tomás Torres Pérez, Subprocurador,* abogados de la Junta Insular de Elecciones; *Arturo Aponte* y *F. Gallardo Díaz,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

En este caso Joaquín Márquez y otros presentaron una petición de *certiorari,* en la que alegaron, entre otros extremos necesarios, que la Junta Insular de Elecciones de Puerto Rico había eliminado y excluído de las listas de electores de Humacao los nombres de 256 personas que aparecían inscritas, y tal exclusión se hizo a virtud de sentencia de la corte municipal de Humacao en cada caso; que en las elecciones del 6 de noviembre de 1928, esos 256 excluídos, intentaron votar y votaron en Humacao, alegando no haber sido excluídos, cuando en realidad lo estaban, valiéndose de *affidavits,* y sus votos no fueron contados, siendo las papeletas correspondientes recusadas y protestadas; que la Junta Insular

de Elecciones al hacer el escrutinio contó y adjudicó al partido Socialista Constitucional las 256 papeletas de voto de los individuos antes referidos, produciéndose así a favor de los candidatos de dicho partido una mayoría de 43 votos sobre los demandantes, candidatos del partido adverso Alianza Puertorriqueña; que la Junta Insular de Elecciones, al hacer el citado escrutinio carecía de facultades o autoridad para contar esos votos de personas que se habían excluído de las listas de electores; y pidieron auto para que la junta demandada remitiera las listas de votantes de Humacao, hojas de cotejo, papeletas protestadas y que se contaron en el escrutinio; y que se comunicara a la junta que el escrutinio efectuado no era final mientras pendía este caso; y en definitiva se anulara lo actuado por la demandada en cuanto a la adjudicación al partido Socialista Constitucional, de los votos que aparecían en las papeletas protestadas.

La orden se dictó de acuerdo con la petición, para que se remitiera a la corte la documentación indicada; y la Junta Insular de Elecciones la cumplió.

Manuel Pereyó y otros, candidatos para alcalde el primero y los demás para miembros de la Asamblea Municipal de Humacao, solicitaron, y obtuvieron, intervención en el proceso; y contestaron, alegando: que las exclusiones de los 256 individuos a que se refiere la demanda eran nulas por serlo las órdenes expedidas por la Corte Municipal de Humacao, por haberse celebrado las vistas de los casos de exclusión el día 27 de julio de 1928, que era día de fiesta legal, y porque la corte no adquirió jurisdicción porque nunca fueron legalmente citados los electores interesados; que los electores eliminados votaron bajo *affidavit* porque sus nombres habían sido eliminados ilegalmente, y el escrutinio fué hecho de acuerdo con la ley; y negaron otros extremos de la demanda. Presentaron también una moción *to quash,* basada en que en la petición no hay hechos suficientes para la causa de acción; que la Junta Insular no tuvo autoridad para rechazar los votos mediante *affidavit,* y resolver en cuanto

a la capacidad de los electores; que se pretende revisar la actuación de las juntas de colegios electorales de Humacao; y que la corte no tiene poder para fijar el resultado de las elecciones.

La corte, *in bank*, decidió las cuestiones planteadas, y declaró con lugar la petición de *certiorari*, anulando el escrutinio general practicado por la Junta Insular de Elecciones el 12 de diciembre de 1928, en cuanto a las del precinto electoral de Humacao, celebradas el 6 de noviembre de 1928, en lo que se refiere a la adjudicación hecha al partido Socialista Constitucional de 203 papeletas de individuos que votaron bajo *affidavit* en varios precintos, y cuyos nombres habían sido excluídos de las listas, anulándose la certificación de tal escrutinio, y ordenándose su rectificación para no contar ni adjudicar las papeletas protestadas. La sentencia es de fecha 11 de febrero de 1929; y contra ella se interpuso apelación, por los interventores. Tratamos del caso No. 4928 de este tribunal.

Los interventores-apelantes han señalado cinco errores. Para los fines de esta decisión consideramos de conveniencia copiar aquí el señalamiento. Es así:

"PRIMER ERROR:—La Corte de Distrito de San Juan cometió error en la sentencia dictada en este caso, al declarar que en el recurso de certiorari, provisto en la sección 89 de la vigente Ley Electoral, podían ventilarse las cualificaciones de los electores y la legalidad de los votos recusados.

"SEGUNDO ERROR:—La Corte de Distrito de San Juan cometió error en la sentencia dictada en este caso, al declarar que en el recurso de certiorari provisto en la sección 89 de la vigente Ley Electoral, podían ventilarse actuaciones de funcionarios u organismos ajenos a la Junta Insular de Elecciones.

"TERCER ERROR:—La Corte de Distrito de San Juan cometió error en la sentencia dictada en este caso, al declarar que las 201 papeletas, objeto del litigio en este caso, eran papeletas protestadas.

"CUARTO ERROR:—La Corte de Distrito de San Juan cometió error en la sentencia dictada en este caso, al declarar que la Junta Insular de Elecciones no debió haber contado las 201 papeletas recusadas, objeto de este pleito.

"QUINTO ERROR:—La Corte de Distrito de San Juan cometió error en la sentencia dictada en este caso al declarar que las sentencias de la Corte Municipal de Humacao, eliminando a los 201 electores objeto de este pleito, eran sentencias válidas y legales."

Parece que deben ser tratadas preferentemente aquellas materias que se relacionan en alguna forma, con la jurisdicción. El quinto señalamiento de error en este caso, merece tal preferencia. Copiamos de nuevo su texto:

"QUINTO ERROR:—La Corte de Distrito de San Juan cometió error en la sentencia dictada en este caso, al declarar que las sentencias de la Corte Municipal de Humacao, eliminando a los 201 electores objeto de este pleito, eran sentencias válidas y legales."

Las partes, ante la corte *a quo*, estipularon (Pág. 66 y 67, T. E.) afirmando como un hecho que los juicios para exclusión se celebraron el día 27 de julio de 1928. Ese hecho aparece también de una certificación del juez municipal.

No acertamos a comprender por qué razón se nos argumenta acerca del precepto del artículo 32 de la Ley Electoral como estaba en 1919. En este mismo alegato de los interventores se cita en diversas ocasiones la Ley Electoral enmendada; y en las enmiendas introducidas por Ley No. 1, de 1924, el artículo 32, en la parte necesaria en este caso, quedó enmendado así:

"La fecha para las vistas de apelaciones de las decisiones de la Junta Insular de Elecciones por las cortes municipales y de paz, según están autorizadas por esta Sección, no excederá del primer día de agosto del año en que fueron dictadas, y las cortes por las cuales fueron oídas dichas apelaciones rendirán sus decisiones a más tardar el quince de agosto de dicho año; *Disponiéndose*, sin embargo, que las vistas y decisiones de apelaciones, según se autoriza y requiere anteriormente por esta Sección, podrán celebrarse y rendirse en los casos correspondientes a las inscripciones y elecciones de 1924, hasta el 15 de agosto y primero de septiembre de dicho año, respectivamente.

      ✳     ✳     ✳     ✳     ✳     ✳     ✳ "

La cita de la ley de 1919 que fijaba la vista de esos casos en otros términos, es totalmente errónea.

■■ ¿En qué forma se ha seguido el procedimiento por la Corte Municipal de Humacao? Este es un extremo interesante, que no debemos dejar de discutir y resolver.

En estos casos, un elector reclama de la Junta Insular de Elecciones que se eliminen de las listas de electores de Humacao, determinados nombres, porque los que los llevan carecen de todas o de algunas de las condiciones requeridas por la ley para ser tales electores. La junta siguió el procedimiento legal, y dentro de él, denegó las exclusiones solicitadas. Entonces el promovente apeló para ante la Corte Municipal de Humacao. Esta, en fecha 20 de julio de 1928 fijó la sesión del día 24 de los mismos mes y año para lectura de un calendario de aquellos casos en apelación; y se ordenó que copia de esa orden fuera fijada por el márshal en el sitio destinado a edictos, para que llegara a conocimiento de los abogados y el público en general. En la sesión del día 24 de julio de 1928, se hizo el señalamiento de todos los casos en lista del número 1 al 301 para la sesión del día 27 de los mismos mes y año; y los demás para el 28; y al final del documento en que se hacen tales señalamientos se lee lo que sigue:

"Una copia de esta lista de señalamiento deberá ser fijada por el Marshal de esta Corte en el sitio destinado a edictos y otra copia deberá ser remitida a cada uno de los representantes locales de los dos partidos políticos principales. Humacao, P. R., julio 24 de 1928. Firmado: Miguel A. Burset, Juez Municipal."

Al pie se dice:

"Recibí una copia para uso de la sección No. 23 del Partido Socialista. Firmado: Joaquín A. Burset, Vocal.

"Recibí una copia para uso del Partido Unión de P. R., julio 24, 1928. Firmado: Rocafort, Pres."

Desde su principio este procedimiento parece poco en acuerdo con el espíritu de la ley. En primer lugar no resulta la necesidad de que el aviso de lectura para señalamiento se haga por fijación de copia de la orden en la tabla de edictos.

O hay que notificar a las partes, o no hay que hacer notificación. Si lo primero, la forma acordada no es la legal; si lo segundo, lo hecho no pasa de ser una redundancia.

Pero se lee ese calendario que contiene cerca de seiscientos casos de apelación; y se señalan 301 de ellos para un solo día, el 27 de julio, tres días después del en que se hace el señalamiento. El plazo no puede ser más corto. Tres días en los que cada uno de los que constituyen ese medio millar de electores ha de preparar su defensa, y ha de recoger la prueba necesaria para tal fin.

Hay algo que no queremos pase como desapercibido. De los señalamientos se hace notificación, pero ¿a quién? ¿Es acaso a aquellos cuyo derecho se va a discutir? No; se entrega una copia al representante del Partido Socialista, y otra al del Partido Unión de Puerto Rico. Estos señores, cualquiera que pueda ser su interés en la contienda electoral, no representan, ante el tribunal, a los electores cuya exclusión se solicita. Nadie puede afirmar que ellos tengan esa representación. Notificarles del señalamiento es algo que no tiene justificación dentro del procedimiento.

Puede aquí afirmarse que, lejos de seguirse en ese procedimiento regla alguna de las de la ley procesal, han quedado prácticamente violadas todas las garantías que ella presta a un ciudadano para defenderse. Y no es ése el fin que persigue la Ley Electoral, cuando dispone, en su artículo 32, que los casos de apelación "serán oídos de acuerdo con las reglas de evidencia y procedimientos judiciales que rigen en casos civiles."

No vemos en qué se ajustó la Corte Municipal de Humacao a los procedimientos en casos civiles.

De la decisión en el caso *Padilla* v. *Corte de Paz,* 35 D.P.R. 301, tomamos el siguiente párrafo:

"Claro está que se trata de un procedimiento rápido, sumarísimo, pero ello no quiere decir que pueda condenarse a una persona sin saber siquiera que ha sido demandado, sin habérsele servido una copia fiel de la demanda, con sólo habérsele citado en forma tan confusa

que más bien podía desprenderse que se le llamaba como testigo y no como parte en el procedimiento. El legislador tuvo buen cuidado de disponer, como hemos visto, expresamente en la ley electoral 'que dichos casos serán oídos de acuerdo con las reglas de evidencia y procedimientos judiciales que rigen en casos civiles.' Ello admite, dadas las circunstancias especiales concurrentes, una reducción al límite de los términos, la mayor simplicidad posible en los procedimientos, una excesiva rapidez en las vistas y resoluciones, pero ello no puede admitir que se prescinda por completo de conceder su día en corte a la parte interesada.''

No importa que alguna cuestión no haya sido suscitada por la apelante. Ello no puede limitar el campo de acción del tribunal. La ley de 12 de marzo de 1903, para transformar el Tribunal Supremo en corte de apelación, contiene una sección (1141 de los Estatutos Revisados de Puerto Rico) que es como sigue:

''Que el Tribunal Supremo de Puerto Rico constituirá de aquí en adelante un Tribunal de Apelación y no un Tribunal de Casación. En sus deliberaciones y fallos en todos los asuntos, tanto en lo civil como en lo criminal, dicho Tribunal no se limitará solamente a infracciones de la ley o quebrantamientos de forma, según fueren señalados, alegados o salvados por los litigantes, o según se hiciera constar en sus exposiciones y excepciones sino que con el más alto fin de justicia, el Tribunal puede también entender en todos los hechos y tramitaciones en la causa tal como aparecieren en autos, considederando en igual forma sus méritos para la mejor administración de justicia y del derecho, y evitar injusticias y demoras.''

Es de la mayor importancia ese precepto legal, que permite prescindir de algún tecnicismo, para que el tribunal tenga una amplia esfera de acción, y pueda desembarazada y libremente llegar a la mayor realización del derecho.

A nuestro entender, no hubo en este caso un emplazamiento formal a las partes. Se notificó a los partidos políticos, no a los electores interesados. Y así podría quizá decirse que a esos juicios fueron los partidos, no los electores de cuya exclusión se trataba.

█ Es algo que no debe quedar sin consideración el hecho del enorme número de señalamientos fijados para cada día.

Para el 27 de julio de 1928, se hicieron 301 señalamientos. Los juicios habían de empezar a las 9 de la mañana; hemos de conceder a la realidad el que se suspendieran a las 12 del día, se siguieran a la 1 p. m., y continuaran hasta las 7 p. m. Serían así tres horas de la mañana, y seis horas de la tarde. Fijando para cada caso diez minutos, que es lo menos que puede fijarse, los 301 casos señalados exigirían cincuenta horas y diez minutos; esto es, 41 horas y 10 minutos en exceso de las nueve antes calculadas. En el terreno de la realidad no cabía esperar que se celebraran en un solo día y en la forma usual estos 301 juicios; y debemos y podemos concluir que el señalamiento era irregular y anómalo.

Pero hay otro extremo que merece toda atención. La parte interventora alega que los juicios para exclusiones se celebraron en un día de fiesta legal, en que no podían ser válidamente celebrados.

La Resolución Conjunta No. 45, de 24 de julio de 1923 en su artículo 1, dice:

"Sección 1. Por la presente se declara día de fiesta oficial y legal en Puerto Rico el día 27 de julio de 1923, y de cada año siguiente, y durante dicho día permanecerán cerradas todas las oficinas públicas insulares y municipales."

Requiere el desarrollo de este extremo para su resolución, la cita de otros textos legales.

Los artículos 10 y 11 del Código de Enjuiciamiento Civil, dicen así:

"Artículo 10. Las cortes deberán celebrar sesión y despachar los asuntos judiciales en cualquier día, exceptuándose lo dispuesto en el artículo siguiente.

"Artículo 11. No podrá actuar ninguna corte, ni despachar ningún asunto judicial, los domingos, el primero de enero, el cuatro de julio, el día de Navidad, el de dar gracias, y el día en que tenga lugar una elección general, a no ser para lo siguiente:

"1. Para dar instrucciones a un jurado, a petición de éste, cuando estuviere deliberando sobre el veredicto;

"2. Para recibir el veredicto de un jurado, o para disolver éste;

"3. Para actuar un juez en una causa o procedimiento criminal;

*Disponiéndose,* que en pleitos civiles podrán dictarse y ejecutarse órdenes de arresto; dictarse y notificarse autos de embargo, ejecuciones, injunctions y autos prohibitorios, entablarse procedimientos para recobrar la posesión de propiedad mueble, y promoverse pleitos en cualquier día para obtener cualquiera de esos autos y procedimientos.''

El artículo 387 del Código Político, es como sigue:

''Artículo 387. Los días de fiesta, en el sentido de este Código, son: los domingos, el primero de enero, el día veinte y dos de febrero, el día veinte y dos de marzo, el Viernes Santo, el día 30 de mayo, el cuatro de julio, el veinte y cinco de julio, el primer lunes de septiembre, que será conocido como el día de la fiesta del trabajo, el día veinte y cinco de diciembre, todos los días en que se celebren elecciones generales en la isla y cada día fijado por el Presidente de los Estados Unidos, por el Gobernador de Puerto Rico, o por la Asamblea Legislativa, para la celebración de día de ayuno, día de acción de gracias o día de fiesta. Siempre que cualquiera de dichos días ocurriere en domingo, será día de fiesta el lunes siguiente.''

Para los fines de esta resolución, es conveniente distinguir, como lo hace el mismo Código de Enjuiciamiento Civil, las diversas actuaciones de las cortes; las hay que pueden llevarse a cabo sin necesidad de abrir la corte, y tener a ésta en sesión pública; y las hay que requieren la sesión en corte abierta y con la presencia de funcionarios como el secretario y el márshal. Esta diferencia se nota especialmente en los artículos 12, 13, 14, 15 y 16 del citado código procesal, que hablan de la celebración de sesiones, y el mismo artículo 11, ya citado, y el 22, que trata las facultades de los jueces en sus despachos.

La Resolución Conjunta No. 45 de 1923, imperativa en su texto y en su espíritu, provee que las oficinas públicas insulares y municipales queden cerradas en la fecha que marca la Resolución misma. La primera consecuencia lógica que puede extraerse de este precepto legal, es que toda actuación judicial que requiera la apertura de corte, y la pública sesión, es imposible conforme a ley, y sería nula por ir contra lo en la ley ordenado.

Y éste es el caso de la sesión pública, en corte abierta, tenida por la Corte Municipal de Humacao el 27 de julio de 1928, para oír los casos de exclusión de electores.

Una lógica interpretación nos lleva a declarar que por la Resolución Conjunta No. 45 de 1923, no se ha hecho otra cosa que añadir un día festivo oficial y legal a los que ya aparecían en leyes anteriores como el Código de Enjuiciamiento Civil.

Se ha discutido mucho acerca de los días hábiles, y los no hábiles para actuar, citados en la jurisprudencia de los distintos Estados, bajo el nombre latino *"dies non juridicus."* La jurisprudencia está muy lejos de ser uniforme.

En el caso *Havens* v. *Stiles,* 101 Am. St. Rep. 195, 8 Idaho, 250, 67 Pac. 919, la cuestión resuelta fué con relación a presentación de una demanda y libramiento de citación y emplazamiento un domingo; y se decidió que esos actos eran ministeriales. Pero lo que más importa de esta decisión es esto: en el estatuto allí aplicado, se encuentra una sección o artículo 3866, que dice:

"No podrá actuar ninguna corte, ni despachar ningún asunto judicial, en domingos, en primero de enero, en el cuatro de julio, en día de Navidad o día de acción de gracias, o en día en que se celebren elecciones generales, a no ser para lo siguiente:

"1. Para dar instrucciones a un jurado, a petición de éste, cuando estuviere deliberando sobre el veredicto;

"2. Para recibir el veredicto de un jurado, o para disolver éste;

"3. Para actuar un juez en una causa o procedimiento criminal; disponiéndose, que en pleitos civiles podrán dictarse y ejecutarse órdenes de arresto; dictarse y notificarse autos de embargo, ejecuciones, injunctions y autos prohibitorios."

El precepto, esencialmente es el mismo en nuestro código.

En la decisión que citamos (Havens v. Stiles) encontramos lo que sigue:

"En el caso de Whipple v. Hill, 36 Neb. 724, 38 Am. St. Rep. 742, 55 N. W. 227, 20 L.R.A. 313—una decisión muy instructiva—se interpreta un estatuto bastante similar al nuestro. La opinión dice así: 'La sección 9, Capítulo IV, de los Estatutos Compilados dispone que el primer lunes del mes de septiembre de cada año será en lo

sucesivo conocido como Día del Trabajo y se considerará como festivo en igual forma y con el mismo alcance que los días de fiesta provistos en la sección 8, Capítulo 41, de los Estatutos Compilados de 1887. Si se hace referencia al calendario se verá que el primer día de septiembre de 1890, en que se libró la orden de embargo de que se trata, era lunes; por tanto, de acuerdo con la disposición anterior, era un día público o de fiesta legal. La objeción al libramiento de la orden de embargo en este caso el Día del Trabajo se basa en la sección 28, Capítulo 19, de los Estatutos Compilados, la que declara que: 'No podrá actuar ninguna corte ni despachar ningún asunto judicial en un domingo o día de fiesta legal, a no ser para lo siguiente: 1. Para dar instrucciones a un jurado que esté deliberando sobre el veredicto que ha de rendir. 2. Para recibir el veredicto de un jurado o para disolver a éste. 3. Para actuar en una causa o procedimiento criminal. 4. Para expedir o denegar un injunction preliminar o interdicto prohibitorio.'

"La Legislatura, a virtud de la sección citada, ha prohibido que las cortes del estado se abran o despachen algún asunto judicial salvo en ciertas excepciones bien definidas, en cualquier día que el estatuto ha declarado día público o de fiesta legal. Debe notarse que la prohibición del estatuto, en lo relativo al despacho de asuntos en días festivos, se refiere a actuaciones que, por su naturaleza, son puramente judiciales, y que no es aplicable a aquellas actuaciones que son meramente ministeriales. El lenguaje de la sección es claro y libre de ambigüedad y no debe ser extendido mediante interpretación judicial más allá del significado claro de las palabras usadas. Si hubiese sido la intención de la legislatura prohibir a las cortes o a los funcionarios judiciales que ejecutaran actos ministeriales durante los días festivos, habría usado palabras adecuadas para expresar tal intención. Si el despacho de todo asunto legal estuviera prohibido en tales días, como ocurre en algunos estados, deberíamos admitir que la orden de que se trata sería nula; pero el estatuto deja de disponer tal cosa. 'Lo que la ley prohibe es que las cortes actúen y despachen asuntos judiciales en días festivos.' Esta intención es manifiesta.''

Es evidente que la corte atendió a la distinción entre las funciones y actuaciones judiciales que requieren se abra la corte y se constituya ésta en sesión, y aquéllas en las que no se requieren tales condiciones, declarando que la prohibición del estatuto se refiere a actos *puramente judiciales,* y no a los ministeriales.

Se cita por la parte apelada la decisión en el caso *Pueblo* v. *Díaz,* 33 D.P.R. 494. Los casos no son iguales. En aquél pudo decirse, con razón, que la proclama del Gobernador tenía el alcance de una recomendación; en el presente se trata de una ley, cuyo precepto para que el día de que se habla sea, legal y oficialmente, de fiesta, es de carácter imperativo.

En el caso *Ex-Parte Dal Porte,* 244 Pac. 355, decidido por la Corte Suprema de California en 24 de febrero de 1926, encontramos lo que sigue:

"La Sección 134 del Código de Procedimiento Civil de California estatuye que ninguna corte, a excepción de la Corte Suprema, debe hallarse abierta para el despacho de asuntos judiciales en cualquiera de los días de fiesta mencionados en la sección diez excepto para los siguientes fines (se mencionan). La Sección 10 del Código de Enjuiciamiento Civil, después de su enmienda en 1925, es en su texto como sigue:

" 'Días de fiesta, en la acepción de este Código, lo son todos los domingos y cualesquiera otros días que se especifiquen o designen como festivos en el Código Político del Estado de California.' "

En la decisión que comentamos se dice que antes de esa enmienda de 1925, la sección 10 del Código de Enjuiciamiento Civil era esencialmente la misma Sección 10 del Código Político en la que se designaban los días festivos, y se establecía que lo eran los sábados después de mediodía; pero en el año citado se enmendó en la forma que queda copiada. En el caso que comentamos se decidió que el sábado por la tarde era de fiesta legal y día no hábil, y la sentencia dictada en ese día, nula; pero sin que ello quitara jurisdicción a la corte para seguir actuando en el caso.

Es indudable que fué la voluntad de la Legislatura crear un día festivo, y que las palabras *"fiesta legal y oficial"* tienen un claro significado, y no se refieren a las oficinas administrativas. En un día de fiesta legal no pueden actuar las cortes, salvo en aquello que les estuviera expresa y claramente permitido por la ley misma; su actuación es por excepción, lo que confirma la regla de que no pueden realizarla

más que en los días no festivos. Y si se requiere para actuar, que se abra la corte, y se lleve a efecto una sesión pública habiendo una ley que ordene lo contrario, entonces la prohibición es más clara y más fuerte.

Es de la mayor importancia para los fines de este razonamiento la consideración de los artículos 388 y 389 del Código Político de Puerto Rico. El texto legal es como sigue:

"Artículo 388. El tiempo en que cualquier acto prescrito por la ley debe cumplirse se computará excluyendo el primer día e incluyendo el último, a menos que éste sea día de fiesta, en cuyo caso será también excluído.

"Artículo 389. Cuando algún acto haya de ejecutarse bajo la ley o en virtud de contrato en un día señalado, y tal día ocurriere en día de fiesta, dicho acto podrá realizarse en el próximo día de trabajo, teniendo el mismo efecto que si se hubiera realizado en el día señalado."

Es evidente la intención del legislador con respecto a la consideración de los días festivos; en ellos no se pueden realizar válida y eficazmente otros actos que los que de una manera expresa hayan sido señalados por la ley; los demás deben transferirse o posponerse, y el mismo artículo 388 que señalamos, les da eficacia cuando se llevan a cabo en el día siguiente, lo mismo que si lo hubieran sido en el día señalado.

██ Se presenta a nuestro estudio un problema nacido de la doctrina jurídica sostenida por muchos tribunales de los Estados Unidos. Se ha mantenido que, aunque el juicio se celebre en un día festivo, si el acusado no hizo protesta alguna o no presentó objeción, no hay nulidad alegable en apelación. Se ha declarado en algunos casos que aunque es error en una corte estar abierta y funcionar en día festivo, si inadvertidamente lo hiciera sin que las partes presenten objeción, el fallo debe considerarse como registrado en día judicial o hábil.

Conocemos la jurisprudencia de lo estados de la Unión y la tendencia de la misma a declarar, como se ha hecho, que aun cuando los juicios se celebren un día festivo, si las partes

interesadas en él no objetan a la irregularidad de su celebración y renuncian así al privilegio de oponerse a la misma, tal renuncia surte el efecto de impedir la anulación del acto.

En el caso presente no había la posibilidad de que el juez inadvertidamente celebrara juicio en un día que era festivo. La legítima autoridad, o sea, la Legislatura de Puerto Rico, había decretado una ley de carácter general y obligatorio ordenando que las oficinas públicas permanecieran cerradas en la fecha que allí se designa, todos los años, y realmente prohibiendo toda actuación oficial en ese día, ya que se declaraba como festivo oficial y legalmente.

Surge aquí el problema acerca de la renuncia de los interesados a cualquier objeción nacida de la vigencia de esa ley. Opinamos que no hubo renuncia eficaz.

¿Pudo expresa o tácitamente renunciar el abogado Sr. Bolívar Pagán a la objeción basada en la falta de emplazamiento y a la nacida de la celebración del juicio en un día festivo?

Hemos dicho antes que aquí no había un emplazamiento a los interesados personalmente. La notificación se hizo a los partidos políticos por medio de sus jefes o representantes.

El abogado Sr. Bolívar Pagán en su declaración dijo que no se le había llamado por los interesados en aquellos casos de exclusión ni había convenido con ellos en su defensa, salvo los casos de Salvá, Maldonado y algún otro; dijo que en aquellos casos él como miembro de la Junta Insular de Elecciones y como líder político tenía interés y por eso intervenía en ellos; pero negó que los intersados contrataran personalmente con él para su defensa y hasta afirmó que Salvá, como líder político, le había hablado de que algunos de los interesados no estaban conformes con su representación; insistió en no haber sido llamado ni requerido por las partes e hizo comentarios con respecto a situaciones que surgieron y a motivos que le indujeron a intervenir. La corte entendió que esta prueba era débil y que esa sola evidencia no era la clara, convincente, concluyente, fuerte y positiva que se

necesitaba para demostrar que Bolívar Pagán no fué el abogado de las partes interesadas.

Para que el abogado represente a un cliente, y pueda por él actuar, pedir o renunciar, es necesario que exista la relación entre aquél y el segundo, con carácter profesional. Así lo expresa la jurisprudencia constante. Y así se dice que el contrato consiste en la mera oferta o petición por parte del cliente, y la aceptación o asentimiento por parte del abogado; que debe existir un convenio actual, expreso o tácito; y que el mero hecho de que uno actúe como abogado por otro, no crea, por sí solo, la relación de abogado y cliente, aunque establece una fuerte presunción. Véase 6 Corpus Juris, 630 y 631, párrafo 124. Es también cierto que, a menos que un estatuto requiera que la autoridad del *attorney* se evidencie por escrito, en un caso ordinario su posición como oficial del tribunal hace innecesario que él pruebe la autorización. Y así parece también de las decisiones de este tribunal en los casos *Claudio* v. *Palacios,* 29 D.P.R. 825, *Aparicio* v. *Christiansen,* 23 D.P.R. 493, y *Franceschi* v. *Sepúlveda,* 27 D.P.R. 118, en que se reconoce la presunción de representación.

En nuestro derecho el contrato entre abogado y cliente tiene el doble aspecto de locación de servicios (que no es necesario estudiar aquí con detenimiento), y de mandato. Como en todo contrato, la relación o el nexo se establecen por el consentimiento, la existencia del objeto del convenio, y la causa del mismo. Y el consentimiento debe aparecer de los actos de oferta y aceptación.

Ni en las secciones 151 a 160 de la Compilación de 1911, ni en la Ley No. 38 de 1916 determinando reglas para el ejercicio de la profesión de abogado en Puerto Rico, encontramos algo que rija específicamente el establecimiento de la relación contractual entre abogado y cliente. Ahora bien; no puede olvidarse que la jurisprudencia, por regla general, se refiere a casos en que el interesado en un asunto ataca la certeza del hecho de que el abogado que apareció defendién-

.dole haya sido tal abogado suyo; y en esos casos es lógico que se requiera una prueba más fuerte para destruir la presunción de debida representación. En este litigio, no son los electores excluídos los que objetan; son los candidatos que aparecen derrotados. No creemos que los casos sean iguales.

Hay hechos que nos pueden conducir a la verdad esencial, que en más de una ocasión no es igual a la verdad procesal. Había aquí unas elecciones pendientes, y en ellas el natural deseo de los contendientes de que triunfaran los partidos políticos a que ellos pertenecían. No puede afirmarse que los que están en esa lucha sean siempre muy cuidadosos en la elección de medios y remedios; los errores y las rápidas determinaciones se suceden en esos casos. Así, aquí la citación de los interesados fué prácticamente suprimida, y quizá se creyó que bastaba citar a los jefes locales de los partidos en lucha; legalmente, éste no era el procedimiento a seguir. Los jefes políticos, no los interesados, llevaron la dirección del proceso, y ellos intervinieron trayendo abogados, y presentándose ante la corte. A la citación irregular, sigue la intervención, irregular también, de los que la recibieron. Y los verdaderamente interesados, con escasas excepciones, no toman una parte activa en los procedimientos. La afirmación hecha por el testigo Bolívar Pagán en el sentido de que él intervenía como miembro de la Junta Insular, no tiene confirmación ni en los hechos, ni en las posibilidades de derecho, ya que no aparece delegación alguna, ni legalmente él podía intervenir en tal representación. La que hizo de que intervenía como *leader* político, está dentro de todas las probabilidades lógicas. Nos hallamos frente a una realidad, de la que no podemos prescindir.

Si el Sr. Bolívar Pagán intervino, como ha afirmado, sin contradicción, como jefe político, o por cualquier motivo que no fuera el mandato directo, expreso o tácito, de los electores interesados, él no era su abogado por razón de un convenio con ellos; y ellos no pudieron, ni de una forma expresa y

clara, ni por interpretación, renunciar a las objeciones contra la jurisdicción, o contra la indebida actuación de la corte municipal.

No creemos de interés el hecho de que dos días después el mismo abogado representara a todos o a parte de los interesados en un procedimiento de *certiorari;* la representación pudo obtenerse en ese tiempo. Aparte de que ése no es el punto en discusión.

De acuerdo con estos razonamientos, *debe revocarse la sentencia apelada, y declarar válido el escrutinio general hecho por la Junta Insular de Elecciones el 12 de diciembre de 1928, en el precinto electoral de Humacao, en cuanto a la adjudicación hecha por dicha Junta al partido socialista constitucional de las 203 papeletas o votos de que en este caso se trata, haciéndose las declaraciones en consecuencia con respecto a la certificación de escrutinio, y declaración del resultado de la elección.*

### OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. ALDREY

De acuerdo con la Ley Electoral, el término para solicitar la exclusión de personas que figuren como electores en las listas de la Junta Insular de Elecciones estará comprendido desde el 1 de enero hasta el 31 de mayo de cada año en que se celebren elecciones y esas peticiones deberán ser resueltas por la Junta Insular de Elecciones a más tardar el 30 de junio de cada año de elecciones. Esas resoluciones pueden ser apeladas presentando escrito en tal sentido a la Junta Insular de Elecciones, la que remitirá las diligencias practicadas a la corte municipal para ante la cual se apelare, la que oirá el asunto de nuevo y señalará uno o más días consecutivos para la vista de tales apelaciones, no debiendo exceder la vista de ellas del 1 de agosto y sus decisiones tienen que ser rendidas a más tardar el 15 de agosto.

Para las elecciones de 1928 fueron negadas por la Junta Insular de Elecciones las exclusiones de sus listas de 596 electores del distrito de Humacao y contra esas resoluciones

fueron establecidos otros tantos recursos de apelación; y la Corte Municipal de Humacao señaló el 27 de julio para la vista de 301 de esas apelaciones y las 295 restantes para el día 28 de julio. De las 596 apelaciones las sentencias de la corte municipal ordenaron la exclusión de 256 electores, los que fueron borrados de las listas por la Junta Insular trazando una línea roja sobre sus nombres y poniendo nota al margen de haber sido excluídos por sentencias de dicha corte. Los 340 casos restantes o fueron desistidas las peticiones de eliminación o fueron declaradas sin lugar. De los 256 electores así eliminados, 203 votaron en las elecciones jurando que eran electores, y habiendo sido contados esos 203 votos por la Junta Insular en el escrutinio que hizo, fué interpuesto este recurso de *certiorari* para que se le ordenase que no contase esos votos; recurso que fué resuelto definitivamente por la Corte de Distrito de San Juan por sus tres jueces a favor de los peticionarios y entonces se interpuso esta apelación contra esa sentencia.

Del único caso orignal de la corte municipal que fué presentado en este recurso, que es el No. 158 contra Catalino García, aparece que fué señalado para ser visto el 27 de julio y que la sentencia fué dictada el 31 de julio. También aparece que el caso 311 contra el elector Germán Figueroa García fué señalado para el 28 de julio pero que por convenio de los abogados de las partes su vista tuvo lugar el 27 de julio. A pesar de que los juicios fueron señalados para días distintos, las partes estipularon que los 256 casos se hallaban en las mismas condiciones que el de Catalino García, que fué señalado para el 27 de julio. La mayoría del tribunal en su opinión hace una operación aritmética para llegar a la conclusión de que no hubo tiempo material para celebrar los juicios en cada día; pero lo cierto es que los juicios fueron celebrados sin protesta alguna de las partes en la corte municipal y sin alegación en contra en el *certiorari* en la corte de distrito ni en esta apelación; y sabemos que el número de los señalados para el día 27 fué aumentado por

convenio de las partes con otro del día 28, lo que contradice la idea de que eran demasiados señalamientos para un día. Quizás fueron desistidas algunas peticiones o tal vez los juicios fueron celebrados por grupos de cuestiones, como por ejemplo los de las personas empleadas en la misma factoría, hacienda o finca si se les recusaba por carecer de domicilio. El hecho cierto es que los juicios se celebraron.

Es cierto que la corte municipal ordenó la citación de los partidos políticos para los juicios y que no consta en los autos que los demandados fueran citados y emplazados, pero también lo es que las respectivas sentencias dicen que los demandados fueron defendidos por el abogado Sr. Bolívar Pagán, declaración que puede ser controvertida. Es asimismo cierto que el abogado que defendió a esos electores declaró en el recurso de *certiorari* que si bien los defendió no estaba autorizado por ellos para representarlos en esos juicios y que compareció, según dijo unas veces, por ser uno de los miembros de la Junta Insular, y según otras, por el interés político que tenía en esas apelaciones. Como miembro de la Junta Insular no pudo comparecer porque no demostró que estuviera autorizado por la junta, ni ésta era parte necesaria en esas apelaciones, pues la contienda es entre el elector inscrito y el que solicita su exclusión, no teniendo otro objeto la notificación de las apelaciones a la junta que el darle aviso de que la exclusión que negó de determinado elector estaba pendiente de decisión judicial. También en los pleitos ordinarios se notifica la apelación al secretario de la corte, y tal notificación no lo convierte en parte en el recurso ni tampoco a la corte cuya resolución o sentencia es apelada. Ni el interés político del abogado en el asunto le daba derecho a intervenir en esos juicios sin permiso de la corte, el que no fué solicitado y obtenido. Para destruir la presunción de que el abogado estaba autorizado por los demandados para representarlos y defenderlos que surgió de la declaración de las sentencias se necesita prueba clara y convincente. La corte inferior que oyó declarar al abogado Bolívar Pagán entendió

que esa prueba era débil y que esa sola evidencia no era la clara, convincente, concluyente, fuerte y positiva que se necesitaba para demostrar que él no fué abogado de los demandados, y no la tuvo en cuenta para su sentencia, ya que de otro modo hubiera dictado su fallo en términos distintos. En el caso de *Sucn. Lluveras* v. *Sepúlveda*, 20 D.P.R. 293, se citó con aprobación el caso resuelto por la Corte Suprema de California, *San Francisco Savings Union* v. *Long*, 123 Cal. 107, 113, en el que su Juez Asociado Sr. Temple se expresó así:

"Se presume siempre hasta tanto se pruebe lo contrario, que un abogado está debidamente autorizado para comparecer y representar a cualquiera de las partes por quien asume su representación. Esta confianza que constituye la base fundamental de todo el procedimiento judicial de este país, descansa no solamente en la creencia que existe del honor y honradez del abogado, sino también en el hecho de ser un funcionario de la corte que ha prestado juramento. No podría existir una infracción más abierta del cumplimiento de los deberes de un abogado, que el comparecer a sabiendas y voluntariamente a nombre de una parte en una acción sin habérsele autorizado para ello. Y esto es así principalmente si la persona a nombre de quien se ha hecho la comparecencia sin su consentimiento, no ha sido notificada, sin saber tampoco que se ha tratado de obtener sentencia contra ella. . ."

En vista de lo expuesto, de que ninguno de los electores ha impugnado la defensa que el abogado hizo de ellos, de que las sentencias en que se dice él compareció en nombre de los demandados no pueden ser atacadas en procedimiento colateral, como se hace en este caso, de que algunos de los demandados estuvieron presentes en el juicio y de que dos días después ese abogado interpuso un recurso de *certiorari* a nombre de esos demandados, diciendo ahora que tampoco fué autorizado por ellos, llego a la conclusión, con la corte inferior, de que dicho abogado tenía la representación de los demandados en el juicio en la corte municipal. De otro modo tendría que concluir que el abogado se tomó representaciones que no le fueron dadas. Aunque los demandados

no hubieran sido citados y emplazados para los juicios, la comparecencia por ellos por el abogado hace innecesaria tal citación y subsana su omisión.

Veamos la cuestión de ser festivo el 27 de julio, día en que se celebraron algunos de esos juicios.

El Código Político del año 1902 dice en su artículo 387 lo siguiente:

"Los días de fiesta, en el sentido de este Código, son: los domingos, el primero de enero, el día veinte y dos de febrero, el día veinte y dos de marzo, el Viernes Santo, el día 30 de mayo, el cuatro de julio, el veinte y cinco de julio, el primer lunes de septiembre, que será conocido como el día de la fiesta del trabajo, el día veinte y cinco de diciembre, todos los días en que se celebren elecciones generales en la isla y cada día fijado por el Presidente de los Estados Unidos, por el Gobernador de Puerto Rico, o por la Asamblea Legislativa, para la celebración de día de ayuno, día de acción de gracias o día de fiesta. Siempre que cualquiera de dichos días ocurriere en domingo, será día de fiesta el lunes siguiente."

Como consecuencia de ese precepto dispone el artículo 388 del mismo código que el tiempo en que cualquier acto prescrito por la ley debe cumplirse, se computará excluyendo el primer día e incluyendo el último, a menos que éste sea día de fiesta, en cuyo caso será también excluído. Posteriormente, en el año 1904, el Código de Enjuiciamiento Civil dispuso lo que sigue:

"Art. 10. Las cortes deberán celebrar sesión y despachar los asuntos judiciales en cualquier día, exceptuándose lo dispuesto en el artículo siguiente.

"Art. 11. No podrá actuar ninguna corte, ni despachar ningún asunto judicial, los domingos, el primero de enero, el cuatro de julio, el día de Navidad, el de dar gracias, y el día en que tenga lugar una elección general, a no ser para lo siguiente:

"1. Para dar instrucciones a un jurado, a petición de éste, cuando estuviere deliberando sobre el veredicto;

"2. Para recibir el veredicto de un jurado, o para disolver éste;

"3. Para actuar un juez en una causa o procedimiento criminal; Disponiéndose, que en pleitos civiles podrán dictarse y ejecutarse órdenes de arresto; dictarse y notificarse autos de embargo, ejecucio-

nes, *injunctions* y autos prohibitorios; entablarse procedimientos para recobrar la posesión de propiedad mueble, y promoverse pleitos en cualquier día para obtener cualquiera de esos autos y procedimientos.''

Más tarde nuestra Legislatura en su Resolución Conjunta No. 45 de 24 de julio de 1923 declaró día de fiesta oficial y legal en Puerto Rico el día 27 de julio de 1923, y de cada año siguiente, y que durante dicho día permanecieran cerradas todas las oficinas públicas insulares y municipales.

El domingo es día festivo y de descanso por su naturaleza en todo el mundo cristiano desde el tiempo del emperador Constantino, siendo otros días festivos por declaración de la Legislatura o del poder ejecutivo. Respecto a los días festivos que no son domingos existe gran disparidad en las decisiones de los tribunales de los Estados Unidos en cuanto a si son días *non juridicus* o inhábiles para actuar los tribunales a menos que tengan una declaración expresa en ese sentido. Así, se ha dicho en el caso de *State* v. *Soper*, 148 Mo. 217, citado en 10 L.R.A. (N. S.) 791, nota primera, que en ausencia de un estatuto conteniendo una disposición mandatoria prohibiendo a los jueces de las cortes oír y resolver asuntos en días legales festivos, los procedimientos en tal día no son nulos; y en el de *Web* v. *State*, Tex. Crim. App. 40 S. W. 989, citado también en el libro mencionado, se dice que una acusación presentada el 22 de febrero no es nula aunque el estatuto dispone que sea un día festivo y que permanezcan cerradas todas las oficinas públicas. En el de *El Pueblo* v. *Díaz*, 33 D.P.R. 499, este tribunal citó el de *Richardson, et al.* v. *Goddard, et al.*, 64 U. S. 43, y 29 C. J. 763, y declaramos que no eran nulas ciertas actuaciones para la constitución de un jurado en un día en que el Gobernador ordenó el cierre de todos los departamentos y oficinas públicas y la cesación de todos los trabajos y negocios públicos, porque el Gobernador no tiene facultad para alterar los días fijados por la ley como inhábiles para los tribunales y que su proclama era solamente una recomendación. Existen

otros muchos casos en términos idénticos que no citaremos por lo que lùego diremos.

En vista de que los días festivos declarados por nuestro Código Político lo son en el sentido de ese código, que no trata de los tribunales de justicia; de que el Código de Enjuiciamiento Civil es posterior al Código Político; que sólo declara días *non juridicus* seis de los muchos días que el Código Político señala como festivos; y del criterio divergente de otros tribunales de los Estados Unidos, he tenido muchas dudas respecto a si el 27 de julio es un *dies non* para actuar los tribunales, y no habiendo podido llegar a una conclusión firme en ese sentido aceptaré la de los cuatro jueces de la mayoría en esta cuestión, o sea, de ser dicho día inhábil para los tribunales, teniendo en cuenta también que no me parece razonable que pueda haber días festivos para una rama del gobierno que no lo sean para otra.

A pesar de lo dicho precedentemente, entiendo que no deben ser declaradas nulas las sentencias de exclusiones dictadas por la corte municipal de Humacao que motivaron esta apelación, por lo siguiente.

Parece ser que el hecho de practicarse actuaciones judiciales en días festivos no las convierte en nulas, pues hay decisiones en ese sentido en varios casos con respecto al 4 de julio, a los sábados por la tarde y al Día del Trabajo, pero no necesito decidir esta cuestión ahora porque mi punto de vista es que no habiéndose opuesto los demandados por su abogado en la corte municipal a que los juicios fuesen celebrados el 27 de julio, no pueden alegar ahora que sean nulos. En 25 R.C.L. 1447 se dice que en casos criminales el acusado está impedido de alegar que el juicio se celebró en un día festivo cuando deja de objetar, citando los casos de *State* v. *Duncan,* 118 La. 702, 10 L.R.A. (N. S.) 791, y el de *Michel* v. *Boxholm,* 128 Io. 706, 5 Ann. Cases 918; y en 29 C. J. 766 se consigna que cuando la corte, aunque esté prohibido que tramite asuntos judiciales en día festivo (*holiday*) celebra un

juicio sin objeción, el caso no será revocado en apelación, aunque es error celebrar juicios en tal día, citando el caso de *State* v. *Whitman,* 49 Wash. 1, 17 L.R.A. (N. S.) 257.

En el caso de *State* v. *Duncan, supra,* se trataba de una condena en día festivo en causa por asesinato y la corte declaró que el fallo no era nulo porque el juicio se celebró sin objeción del acusado, citando a 1 Bishop Crim. Law, párrafo 996; *State* v. *Rose,* 114 La. 1062, 38 So. 858; *State* v. *Jackson,* 3 La. Ann. 96; *State* v. *White,* 52 La. Ann. 206, y *State* v. *Arbuns,* 105 La. 730, y las decisiones en esos casos citados.

En ese caso de Duncan se menciona el de *Re Bonerman;* y en el voto disidente que hubo no se trató esa cuestión.

También en el caso de *State* v. *Whitman County, supra,* se oyó alguna prueba en un día festivo y la corte se negó a anular el fallo diciendo:

"Indudablemente sería erróneo en una corte estar abierta y resolver asuntos judiciales en un día festivo, y asumimos que ningún juez en este Estado lo hará a sabiendas. Si, por cualquiera causa, uno lo hiciera inadvertidamente sin que las partes hicieran objeción, el fallo deberá ser considerado como registrado en día judicial y esta corte, ciertamente, no declarará tal fallo nulo a petición de un litigante que consintió y que objetó por primera vez en apelación o por auto de certiorari. Aunque no hemos encontrado un caso idéntico a éste, los anteriores principios han sido substancialmente reconocidos por otras cortes y por esta corte."

En ese caso se citan los siguientes para sostener la resolución: el de *Duncan, supra; Ehrlisch* v. *Pike,* 53 Misc. 328, 104 N. Y. Sup. 818; *Houston, etc. W. T. R. Co.* v. *Harding,* 63 Tex. 162; *Bardley* v. *Claudon,* 45 Ill. App. 326; *Latta* v. *Cattawba Electric Co.,* 146 N. C. 285, y otros más. En 63 Texas 163 se resolvió que un día de fiesta legal (*holiday*) no es necesariamente día *non juridicus* y que el haberse practicado pruebas en un pleito el día primero de enero no anula el fallo, pero que si era nulo el apelante tenía el privilegio de haberse opuesto a que su asunto fuese considerado en ese día y debió haberlo alegado antes de que el juicio fuera cele-

brado, o por lo menos haber solicitado que se dejase sin efecto el fallo después de ser dictado, y que era demasiado tarde bajo esas circunstancias objetar por primera vez en apelación. Y en 34 Cal. App. 384 se declaró que si hubo error en celebrar un juicio en día festivo el demandado no puede alegar ese error porque su abogado estuvo en la corte y abandonó su objeción, y se citan varios casos de California. No he encontrado caso alguno en que habiendo sido tratada esa cuestión haya sido resuelta de manera distinta.

Entiendo que la doctrina declarada por esas decisiones es justa y que debemos seguirla, pues no es razonable que una persona acuda sin objeción a un juicio en día festivo esperando tener éxito y que cuando vea frustradas sus esperanzas alegue después en apelación o en un *certiorari* que la actuación de la corte es nula por haber tenido lugar en día festivo. En el caso presente no consta de los autos ni se dice en ninguna parte que se hiciera objeción alguna por ese motivo, ni en ellos se dice siquiera que la objeción fué hecha. Hay muchos actos que se realizan contra lo dispuesto en las leyes, que, sin embargo, quedan convalidados por falta de objeción en tiempo oportuno.

Réstame decir que en este caso y en cualquier caso que ocurra lo mismo habrá sido inadvertida la actuación de la corte, porque de otro modo no es lógico suponer que la corte y los abogados hayan querido trabajar en un día festivo. Uno solo de los casos citados habla de inadvertencia al celebrar un juicio en día festivo, pero los demás se limitan al mero hecho de haberse celebrado en días de esa clase.

En resumen: no habiendo demostrado el abogado Bolívar Pagán que su comparecencia en los casos a que se refiere este *certiorari* no fuera hecha a nombre de los demandados, y no habiendo hecho objeción en nombre de ellos a que la vista de esos casos se celebrara el 27 de julio, día festivo, entiendo que no son nulos esos fallos y que debe ser confirmada la sentencia apelada.