JUAN JOSÉ ORTIZ DEL RIVERO ET ALS., peticionarios y apelados, *v.* CORTE DE PAZ DE LAS PIEDRAS, demandada y apelante.

Núm. 7417.—*Sometido:* Marzo 9, 1938. *Resuelto:* Abril 8, 1938.

*Miguel A. Burset* y *A. García Veve,* abogados de la apelante; *C. Ortiz Stella* y *Luis Pereyó,* abogados de los.apelados.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Los ochocientos quince peticionarios y apelados, vecinos de Las Piedras, presentaron solicitudes para ser inscritos como electores del precinto electoral de dicho pueblo. Los individuos Pedro Martínez, José Cáceres y Mariano Lebrón presentaron peticiones firmadas por ellos para la exclusión de todos y cada uno de los peticionarios, quienes radicaron los contra-*affidavits* requeridos por la ley para que sus nombres permaneciesen en las listas electorales. Las referidas peticiones de exclusión fueron desestimadas por la Junta Insular de Elecciones, quedando así en las listas electorales los nombres de todos los querellantes. Contra las resoluciones dictadas por la Junta Insular de Elecciones interpuso apelación el individuo Modesto Velázquez Flores, persona distinta de aquellas que habían solicitado la exclusión de los electores. En el acto de la vista ante la Corte de Paz de Las Piedras, los electores solicitaron la desestimación de todas y cada una de las apelaciones, por el motivo de aparecer firmados los escritos de apelación por Modesto Velázquez Flores, quien no había suscrito las peticiones de exclusión de los electores peticionarios. Declaradas sin lugar las peticiones de desestimación y resueltas las apelaciones en

contra de los electores, acudieron éstos ante la Corte de Distrito de Humacao en solicitud de un auto de *certiorari* para la revisión y anulación de las resoluciones dictadas por la corte de paz recurrida. Pidieron además los peticionarios que se condenara al juez de dicha corte al pago de costas, desembolsos y honorarios de abogado.

Expedido el auto en agosto 10 de 1936 y señalado el 1 de septiembre de 1936 para la vista del recurso, compareció en ese día la corte recurrida y solicitó la anulación del auto por los siguientes motivos:

1º. Que ni la petición ni el auto expedido contienen hechos bastantes para poner en conocimiento de la corte recurrida las diligencias y procedimientos que deberá remitir a la Corte de Distrito.

2º. Insuficiencia de los hechos alegados en la petición para constituir causa de acción.

3º. Que la petición no ha sido jurada por personas interesadas ni por una parte perjudicada.

4º. Falta de jurisdicción de la corte de distrito por ser ilegal el juramento de la petición, por no tener Juan José Ortiz del Rivero facultad para prestar tal juramento.

5º. Indebida acumulación de partes y de acciones, debiendo cada caso y cada procedimiento ser objeto de una petición de *certiorari* por separado.

6º. Que el remedio de *certiorari* es improcedente por tener los peticionarios un remedio adecuado y eficaz en el curso ordinario de la ley.

En fecha 14 de septiembre de 1936, la corte de distrito dictó sentencia anulando las dictadas por la Corte de Paz de Las Piedras en los casos de 793 de los peticionarios, y declarando sin lugar la petición de *certiorari* en cuanto a la electora Francisca Rodríguez Cruz. No conforme con dicha sentencia, la corte recurrida apeló para ante esta Corte Suprema.

En 28 de septiembre de 1936, la corte inferior, a moción de los peticionarios y para asegurar la efectividad de la sentencia, dictó una orden dirigida a la Junta Insular de Elecciones y a cada uno de sus miembros para que se abstuvie-

ran, bajo pena de desacato, de eliminar los nombres de los peticionarios de las listas electorales. Contra esa orden se ha interpuesto también recurso de apelación.

El juez apelante imputa a la corte de Distrito la comisión de siete errores. Los discutiremos en el mismo orden en que aparecen expuestos en el alegato del recurrente.

En el primer señalamiento se alega que el auto de *certiorari* no fué expedido en forma legal: (*a*) por no mencionarse en el mismo el nombre de las personas a cuyo favor fué expedido, ni los procedimientos que se intentaba revisar; y (*b*) por haber sido expedido *ex parte*.

Del récord aparece que la petición fué titulada "Juan José Ortiz del Rivero, et als., querellantes, *v.* La Corte de Paz de Las Piedras, Puerto Rico, su Juez Hon. Ángel Rodríguez, querellado"; que en el párrafo primero de la petición se expresan los nombres de los 815 querellantes; y que en los párrafos 3 a 9 inclusive se describen los procedimientos seguidos ante la Corte de Paz de Las Piedras, para la revisión de los cuales se solicitó el auto de *certiorari*. Aparece también que la orden de la corte autorizando la expedición del auto fué dictada en 10 de agosto de 1936 y que el auto fué expedido por el secretario y notificado por el márshal al querellado en la misma fecha de su expedición. En su certificado de diligenciamiento el márshal hace constar que cumplimentó la orden de la corte entregando al querellado copia de la orden y también copia de la petición e informándole "que remitiera inmediatamente a esta corte todas y cada una de las apelaciones electorales sobre los querellantes, a fin de revisar los procedimientos de dicha corte de paz"; y que notificó al querellado que la vista del caso se había señalado para el día 1º. de septiembre de 1936.

De la certificación de las minutas de la corte inferior consta que en obediencia al auto expedido el querellado hizo el correspondiente *return*, enviando al tribunal de distrito más de diez días antes del 1º. de septiembre en que habría de celebrarse la vista del caso, los expedientes de los casos

de los peticionarios, con excepción de 21 casos que según informes del querellado nunca habían estado ante la corte de paz.

Vistas las mencionadas constancias del récord debemos resolver que el querellado tuvo amplios informes en cuanto a los nombres de las personas a favor de las cuales se expidió el auto y en cuanto a los procedimientos que habrían de ser revisados por la corte de distrito. Los defectos apuntados por el apelante en el primer señalamiento en nada perjudicaron al querellado, como lo demuestra el hecho de que éste hizo su *return* de acuerdo con la ley. Las objeciones en el momento de la vista y después de haber cumplido lo que por el auto se le ordenaba fueron interpuestas tardíamente y la corte inferior no erró al desestimarlas. Véanse: 11 C. J. 165; *Baker* v. *Superior Court*, 71 Cal. 583.

En el segundo señalamiento se ataca la validez del auto por no haber sido éste expedido a nombre de "Estados Unidos de América, el Presidente de los Estados Unidos, SS," según lo dispone el Artículo 10 de la Carta Orgánica de Puerto Rico, que lee así:

"Todas las diligencias judiciales se harán a nombre de "Estados Unidos de América, SS, el Presidente de los Estados Unidos". . .

Y en su texto inglés, como sigue:

"That all judicial process shall run in the name of the 'United States of America, SS, the President of the United States'. . . ."

En la orden de 10 de agosto de 1936, por la que se autoriza la expedición del auto de *certiorari* y se ordena al secretario que expida el correspondiente mandamiento, no aparecen las palabras prescritas por el artículo 10 de la Carta Orgánica, supra. El mandamiento librado por el secretario bajo el sello de la corte, diligenciado por el márshal y cumplimentado por el querellado, aparece encabezado con las palabras requeridas por el estatuto.

Arguye el apelante que la "diligencia judicial" (*judicial process*) a que se refiere el estatuto es la orden por la cual

la corte ante la cual se presenta la solicitud autoriza la expedición del auto de *certiorari* y no el mandamiento que expida el secretario. Y en esa errónea interpretación de la ley se basa toda la argumentación del querellado para sostener la alegada nulidad del procedimiento.

En el alegato del apelante encontramos la correcta definición de lo que se entiende por *process*. Es como sigue:

"*Process:* El auto (*writ*), notificación u otro escrito formal, expedido por autorización de la ley con el propósito de traer al demandado ante una corte de justicia para que conteste las peticiones del demandante en una acción civil." 32 Cyc. 420 (Title 'Process'), Lewis Law Dictionary, pág. 258.

Y en Bouvier's Law Dictionary, Vol. 2, pág. 766, encontramos la siguiente definición:

"*Process,* en la práctica. El medio para obligar a un demandado a comparecer ante la corte, después de haberse expedido el auto (*writ*) original, en casos civiles, y después de haberse formulado acusación, en los casos criminales. El método adoptado por la ley para obligar al cumplimiento del auto original u órdenes de la Corte."

El mandamiento expedido por el secretario, bajo el sello de la corte y notificado por el márshal al juez de paz demandado, es la diligencia judicial o *process* mediante el cual la corte de distrito adquirió jurisdicción sobre la persona del demandado. Y ese mandamiento se ajustó, a nuestro juicio, a los requisitos de la Carta Orgánica y de los artículos 670 a 674 del Código de Enjuiciamiento Civil, ed. 1933. Véase: Artículo 498 del Código de Enjuiciamiento Criminal.

En su tercer señalamiento alega el apelante que la corte inferior erró al expedir el auto sin estar la petición jurada por persona interesada o perjudicada, no teniendo la persona que hizo el juramento atribuciones ni facultades para hacerlo.

La solicitud fué hecha a nombre de 815 electores que alegaban haber sido erróneamente excluídos de las listas electorales, y jurada por uno de ellos, Juan José Ortiz del Rivero.

La objeción del demandado se basó en la alegación de que el nombre del peticionario Juan José Ortiz del Rivero no había sido eliminado de las listas. Y para sostenerla, el demandado ofreció un certificado expedido por el Superintendente de Elecciones, el cual no fué admitido por la corte. La objeción fué formulada y la prueba ofrecida en el acto de la vista, el 1º. de septiembre de 1936, más de diez días después de haber el demandado hecho su *return*, en obediencia al auto expedido por la corte.

Una de las funciones del auto de *certiorari* es traer ante la corte que lo expide, para ser revisadas, las sentencias o adjudicaciones de un tribunal inferior, dictadas sin jurisdicción, cuando no existe apelación o cuando ésta no proporciona un remedio claro, rápido y adecuado. En el procedimiento extraordinario de certiorari, el *return* de la corte interior constituye la contestación y la evidencia del caso, sobre las cuales debe celebrarse la vista, a menos que se hiciere una moción para un *return* adicional o enmendado. *Stumpf* v. *Board of Supervisors,* 131 Cal. 364; *Piovanetti* v. *Asamblea Municipal,* 31 D.P.R. 522. Y siendo esto así, cualesquiera defectos de forma que no afecten la jurisdicción de la corte que expidió el auto quedaron subsanados o renunciados por la presentación del *return*.

No nos convence la argumentación del apelante en apoyo de su alegación de que la solicitud no aduce hechos suficientes para determinar una causa de acción. La mejor demostración de que la solicitud dió a la corte recurrida toda la información necesaria sobre los procedimientos que habrían de ser revisados es el hecho de que después de recibir copia de ella su juez hizo un *return* completo, elevando a la corte de distrito los records de las apelaciones de los querellantes.

La solicitud presenta en términos claros y precisos una cuestión jurisdiccional y un error procesal revisables por medio de *certiorari*. Esa cuestión, que a nuestro juicio es la única sustancial que nos presenta este recurso, envuelve la interpretación de la sección 32 de la Ley Electoral de

Puerto Rico, según fué enmendada por la Ley núm. 3 de 29 de junio de 1936 (Leyes de 1936, Tercera Legislatura Extraordinaria, pág. 9), que en lo pertinente lee como sigue:

"Sección 32.—Toda persona cuya cancelación de inscripción como elector se hubiere ordenado por la Junta Insular de Elecciones y toda persona cuya petición de exclusión de una inscripción hubiere sido rechazada o denegada por la Junta Insular de Elecciones, podrá apelar de la resolución de dicha junta ante la corte municipal del municipio a que correspondiere dicha lista de inscripciones, si existiere una corte municipal en dicho municipio, y si no existiere corte municipal alguna en dicho municipio, dicha apelación deberá llevarse a la corte de paz del mismo." (Compilación de las Leyes y Reglamentos sobre Inscripciones y Elecciones, pág. —).

Ha pasado ya a la categoría de principio elemental de derecho el de que el recurso de apelación es un derecho estatutario, que no existe a menos que sea expresa y taxativamente concedido por el estatuto. De acuerdo con la sección 32, supra, de las resoluciones de la Junta Insular de Elecciones, decretando o denegando la exclusión de las listas de un elector, solamente pueden apelar el elector excluído o el recusador cuya petición de exclusión fué desestimada, según el caso. No puede, por consiguiente, apelar ninguna persona extraña al procedimiento de exclusión, como lo era el apelante Modesto Vázquez Flores, quien no fué la persona que juró y presentó las peticiones para la exclusión de los electores peticionarios. Las resoluciones dictadas por la Junta Insular de Elecciones, rechazando las peticiones de exclusión suscritas por los recusadores Pedro Martínez, José Cáceres y Mariano Lebrón, se convirtieron en firmes y definitivas al no ser recurridas por dichos recusadores. Los escritos de apelación suscritos por Modesto Vázquez Flores por ser legalmente nulos no confirieron jurisdicción a la Corte de Paz de Las Piedras. Las sentencias dictadas por dicha corte, revocando las resoluciones de la Junta Insular de Elecciones, fueron dictadas sin jurisdicción y son legalmente nulas. No erró la corte de distrito al decretar su nulidad.

■ El quinto señalamiento se refiere a la desestimación de la excepción sobre indebida acumulación de partes y de acciones. No erró la corte inferior al desestimarla. La interposición de tal excepción después de haber sido hecho el *return,* que equivale a la contestación del querellado, fué tardía. El defecto, si alguno había en la acumulación de partes y acciones, quedó renunciado y subsanado por la presentación del *return.*

El error cometido por la corte de paz, al revocar sin tener jurisdicción para ello las resoluciones de la Junta Insular de Elecciones, fué el mismo y afectaba por igual a cada uno de los peticionarios. Éstos tenían un interés común en que el error fuese corregido y en que no se les privase indebidamente de su derecho a ser inscritos como electores. La parte demandada era una sola, la Corte de Paz de Las Piedras, y en un caso como el de autos ésta no podía ser perjudicada en manera alguna porque su alegado error fuese revisado y corregido o anulado a petición de 815 electores, en vez de ser revisado 815 veces distintas a virtud de igual número de peticiones individuales radicadas separadamente por cada uno de los electores perjudicados por tal error. Considerando que la misión fundamental de los tribunales es administrar justicia rápida, prescindiendo de tecnicismos legales invocados con el solo propósito de obstaculizar el libre ejercicio del sufragio, opinamos que la corte inferior no erró al desestimar la excepción de indebida acumulación de partes y causas de acción. Véase: Artículo 66, Código de Enjuiciamiento Civil.

■ Alega el apelante que era improcedente el recurso de *certiorari* por entender que los peticionarios tenían un remedio adecuado y eficaz en el curso ordinario de la ley.

Aceptando, sin resolverlo, que las sentencias de la corte de paz decretando la exclusión de electores cuya inclusión había sido ordenada por la junta, fuesen apelables para ante la corte de distrito, eso por sí solo no sería un fundamento indiscutible para la denegación del auto de *certiorari.* Para

que pueda constituir un óbice para la expedición del auto es preciso que el derecho de apelación sea rápido, adecuado y eficaz para la protección de los derechos de los peticionarios. Cuando no lo es, no incurre en error el tribunal que en uso de su poder discrecional expide el auto para corregir errores cometidos por un tribunal inferior.

La interposición de 815 apelaciones, las que seguramente no hubieran podido ser vistas y resueltas antes de la fecha señalada para las elecciones, debido al excesivo trabajo que recae sobre las cortes de justicia durante el período electoral, no era en verdad un remedio rápido y adecuado para la protección de los derechos de los peticionarios, quienes hubieran sido privados del voto a no ser por la intervención de la corte de distrito mediante el auto recurrido. *People* v. *County Judge,* 40 Cal. 479; *Bennett* v. *Wallace,* 43 Cal. 25; *Sánchez* v. *Sucn. Díaz,* 12 D.P.R. 83; *Núñez* v. *Soto Nussa,* 14 D.P.R. 199; *Ríos* v. *Ríos,* 15 D.P.R. 280; *Argüelles* v. *Rossy,* 19 D.P.R. 1049; *Sánchez* v. *Cuevas Zequeira,* 23 D.P.R. 50; *San Juan Racing & Sporting Club* v. *Foote,* 31 D.P.R. 161.

En el último señalamiento se imputa a la corte inferior el error de haber expedido la orden de aseguramiento de sentencia, por la que se prohibió a la Junta Insular de Elecciones la eliminación de los nombres de los peticionarios de las listas electorales.

No estamos de acuerdo con el apelante en que la orden de aseguramiento sea nula por el solo hecho de haber sido dictada después de la interposición del recurso de apelación para ante esta Corte Suprema. *Buxó, Jr.,* v. *Corte,* 51 D.P.R. 322, 327. Pero aun si aceptáramos que hubo error en su expedición, tendríamos que sostener que dicho error no constituye motivo suficiente para la revocación del fallo recurrido. Tanto la Junta Insular de Elecciones como la Corte de Paz de Las Piedras estaban obligadas a respetar la sentencia anulatoria de las dictadas por la corte de paz, sin que fuera necesario expedir la orden de aseguramiento de sentencia. No

siendo ejecutables las sentencias de la corte de paz por haber sido anuladas, ni tampoco la de la corte de distrito por haber sido apelada, la Junta Insular de Elecciones estaba obligada a mantener el *statu quo* creado por ella al decretar la inscripción de los electores. El error no pudo perjudicar en manera alguna al juez recurrente y debe ser desestimado.

*La sentencia y orden recurridas deben ser confirmadas.*