Eugenio Padilla Ríos, demandante y apelado, *v.* Corte de Paz de Maricao, Hon. Francisco Miró, Juez interino, Hon. Junta Insular de Elecciones y E. W. Keith, Superintendente General de Elecciones de Puerto Rico, demandados y apelantes.

No. 3618.—*Visto:* Noviembre 12, 1925. *Resuelto:* Abril 12, 1926.

1. Certiorari — Procedimientos y Resolución — Del Diligenciado (*Return*)— Limitación de la Corte por el Return.—Tratándose de un *certiorari* clásico, la corte que lo expide está limitada para decidir la cuestión que se plantee a lo que demuestra el diligenciado (*return*).

2. CERTIORARI—APELACIÓN — ERRORES NO PERJUDICIALES — ADMISIÓN DE PRUEBA FUERA DEL DILIGENCIADO.—El admitir, en la vista de un *certiorari* clásico, prueba fuera del diligenciado (*return*) es un error no perjudicial cuando del propio *return* surge la falta de jurisdicción de la corte sobre la persona del peticionario.

3. ELECCIONES—INSCRIPCIÓN DE ELECTORES—CANCELACIÓN O EXCLUSIÓN DE INSCRIPCIÓN — APELACIONES PARA ANTE LA CORTE MUNICIPAL O DE PAZ.—La apelación que establece el artículo 32 de lo Ley de Inscripciones y Elecciones, según quedó enmendado por Ley de 1924 (p. 15) es un procedimiento sumario que admite una reducción all límite de los términos, la mayor simplicidad posible y una excesiva rapidez en las vistas y resoluciones, pero en el cual no puede prescindirse de citar debidamente a los electores con entrega de copia del escrito en que la apelación se basa.

4. CERTIORARI — COSTAS — TEMERIDAD O MALA FE.—Cuando, atendido el diligenciado (*return*), no resulta la temeridad del demandado y éste pudo actuar, como en el caso de autos, en la forma que lo hizo de buena fe, no debe condenársele al pago de costas.

SENTENCIA de *Angel Acosta,* J. (Mayagüez), declarando con lugar el auto establecido, con costas. *Modificada y confirmada.*

*M. Romany, Fiscal de Distrito,* y *Angel A. Vázquez,* abogados de los apelantes; *Benet & Souffront,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Eugenio Padilla presentó en la Corte de Distrito de Mayagüez una petición de *certiorari* con objeto de que la corte revisara los procedimientos seguidos en la Corte de Paz de Maricao con motivo de cierta apelación entablada por Tomás Quintana contra una resolución de la Junta Insular de Elecciones negando la exclusión de Padilla de las listas electorales del municipio de Maricao. El auto fué expedido. Se celebró una vista en la que intervinieron el peticionario por su abogado y el juez de paz por el suyo y por el fiscal del distrito. La corte finalmente anuló la sentencia de que se querelló el peticionario y no conforme el juez de paz demandado interpuso el presente recurso de apelación, señalando en su alegato la comisión de tres errores, así:

"1. La corte erró al admitir, en el acto de la vista del *certiorari,* prueba extraña y distinta al return;

"2. La corte erró al dictar sentencia declarando con lugar la petición de *certiorari,* a pesar de que el return demostró que en la celebración del juicio en la Corte de Paz se siguió el procedimiento

de ley, citándose a Eugenio Padilla y que dicha Corte actuó con jurisdicción;

"3. La corte erró al condenar al demandado al pago de costas."

[1, 2] Convenimos con el apelante en que es una regla bien establecida que en casos de *certiorari* la corte que expide el auto está limitada para decidir la cuestión que se le plantee a lo que demuestra el diligenciado.

En el caso de *Rodríguez* v. *Asamblea Municipal de Guánica,* 31 D.P.R. 493, 498, esta corte hizo las siguientes citas de Spelling y de Corpus Juris:

" 'En el procedimiento de *certiorari* no existe alegación formal por parte del demandado. El auto diligenciado hace las veces de contestación en una acción ordinaria, y a veces se le designa como tal. El único oficio que desempeña el auto de *certiorari* de la ley común es hacer que se certifiquen los autos de un procedimiento por una corte inferior a una superior y es el deber del organismo inferior a quien el auto se dirige enviar una transcripción completa de los autos, debidamente certificados, a la corte que concede el auto sin ninguna exposición de hechos que no consten de los autos.' 2 "Spelling, Injunctions and other Extraordinary Remedies," pág. 1733.

" . . . . El auto diligenciado constituye la contestación, así como la prueba y el caso se celebra por virtud del mismo, a menos que mediante moción se presente una contestación adicional o enmendada. Stump v. San Luis Obispo County, 131 Cal. 364, 366, 63 P. 663, 82 A.S.R. 350; . . . . 11 C.J. 156, nota 37 (a)."

En los últimos años la Asamblea Legislativa ha decretado recursos de *certiorari* en determinados casos. Esos recursos han sido considerados por esta corte como *"certioraris"* especiales a los cuales debe aplicarse en todo lo posible las reglas del *certiorari* clásico pero admitiendo ciertas variaciones consistentes con la naturaleza del asunto y tendentes a convertir en realidad el propósito del legislador. Parece conveniente a este respecto transcribir lo que esta corte dijo en el caso de *El Pueblo* v. *Oms,* 34 D.P.R. 455, 457. Fué así:

" (2) El procedimiento de *certiorari* de referencia, aunque de-

bido al uso del nombre puede tener alguna de las características de un auto clásico de *certiorari*, no está limitado a un examen de la documentación oficial. Las protestas, los *affidavits* presentados ante la junta y posiblemente alguna prueba *aliunde*, especialmente si ha sido descubierta recientemente, podrían ser revisados en un procedimiento de *certiorari*. La idea de la legislatura fué proveer un auto para la corrección de los abusos electorales, y lo mismo que en la Ley Municipal y la Ley de Compensaciones a Obreros, la legislatura ha conferido un remedio. El limitarlo a la documentación oficial haría el auto en algunos casos completamente ilusorio.''

El caso concreto sometido a nuestra consideración y resolución no es en verdad uno de los *certioraris* especiales a que acabamos de referirnos. Si la Corte de Distrito de Mayagüez pudo expedirlo lo fué a virtud de los poderes que otorga la ley general de 1904 (Comp. 1911, secs. 1349 a 1353), sobre la materia. Siendo ello así y apareciendo que la corte admitió prueba fuera del diligenciado, es necesario reconocer que el error alegado existe. Ahora bien, dicho error no es, a nuestro juicio, perjudicial, porque del diligenciado por sí solo surge la falta de jurisdicción de la Corte de Paz de Maricao sobre la persona del peticionario, como veremos en seguida al considerar el segundo de los errores señalados.

[3] El diligenciado del auto demuestra que el 29 de julio de 1924 el abogado R. A. Saliva presentó un escrito ante la Corte de Paz de Maricao en el asunto de Tomás Quintana, en el que éste aparece apelando de la resolución de la Junta Insular de Elecciones que desestimó su petición de exclusión de los electores Eugenio Padilla y Juan B. Martínez. No consta que el escrito se notificara al peticionario Ríos.

El 6 de agosto de 1924 la corte de paz dictó una orden que copiada a la letra dice:

''La corte en vista de que este asunto es de carácter urgente y se encuentra pendiente de vista y 'resolución, señala, a propia moción, el día ocho de agosto de 1924, a las nueve de la mañana, para la celebración del juicio. Y la corte ordena que se cite para dicho

juicio a Tomás Quintana, Eugenio Padilla Ríos, Juan Bautista Martínez Rivera, José Avilés, Lcdo. Rafael A. Saliva y Lcdo. Angel A. Vázquez.''

Luego sigue el mandamiento así:

''Estados Unidos de América.—El Presidente de los Estados Unidos, SS.—El Pueblo de Puerto Rico versus Eugenio Padilla Ríos.—En el Juzgado de Paz de Maricao, Puerto Rico.—El Pueblo de Puerto Rico, a Eugenio Padilla Ríos, Rafael A. Saliva, Tomás Quintana y Angel A. Vázquez.—Por la presente se requiere a usted para que comparezca ante este Juzgado de Paz de Maricao, Puerto Rico, el día 8 de agosto de 1924, a las nueve de la mañana, como testigo en un proceso civil instituído por Don Tomás Quintana, contra Eugenio Padilla Ríos, en virtud de una apelación presentada contra una resolución de la Junta Insular de Elecciones, y si usted no comparece se le considerará culpable de desacato a la corte.—Extendido bajo mi firma en Maricao, Puerto Rico, hoy seis de agosto de 1924.—(fdo.) Francisco Miró, Juez de Paz Int.—(fdo.) Tomás Quintana.—A. Vázquez.''

Y hay otro documento que dice:

''Citación a testigos por Ramón Liquet.—En la Corte de Paz de Maricao, P. R.—En el asunto de Tomás Quintana.—Apelación de la Junta Insular de Elecciones sobre inscripciones.—Affidavit.—Yo, Ramón Liquet, mayor de edad, juro solemnemente: Que no tengo interés en este asunto, que soy ciudadano bona-fine de Puerto Rico, con residencia en Maricao, y en la fecha que más adelante se dirá, era mayor de veinticinco años; que recibí la anterior cédula de citación el día seis de agosto de 1924 y el día seis de agosto de 1924 cité personalmente en Maricao, P. R. a Tomás Quintana, José Avilés y Lcdo. Angel A. Vázquez que por encontrarse fuera de la municipalidad el día seis de agosto de 1924 los Sres. Eugenio Padilla Ríos y Juan Bta. Martínez Rivera, esperé hasta el día siete de agosto de 1924, día en que cité personalmente en Maricao, P. R., a los Sres. Eugenio Padilla Ríos y Juan Bta. Martínez Rivera, para que el día ocho de agosto de 1924, a las nueve de la mañana, comparecieran todos ante la Corte de Paz de Maricao para la celebración del juicio en este caso, y que al citar a todas y cada una de dichas personas les mostré personalmente la anterior cédula de citación.—Maricao, P. R., 7 de agosto de 1924.—(fdo.) Ramón Liquet.—No. 89.—Suscrito y jurado ante mí por Ramón Liquet hoy día siete de agosto de 1924.—(fdo.) Francisco Miró, Juez de Paz interino de Maricao.''

El ocho de agosto de 1924 no compareció Padilla. Eso no obstante oyó la corte la apelación y la declaró con lugar revocando la resolución de la Junta Insular de Elecciones y decidiendo que Padilla no era un elector capacitado del municipio de Maricao. Fué entonces que Padilla archivó su petición de *certiorari* ante la Corte de Distrito de Mayagüez y obtuvo mediante ella que la sentencia en la Corte de Paz de Maricao fuera anulada.

Al razonar su fallo la corte de distrito hizo constar que la cédula de citación empleada era una de las formas impresas para causas criminales usadas para la citación de testigos. Ella en verdad sólo contiene el apercibimiento de que de no comparecer la persona citada se le condenará por desacato a la corte, y admitiendo en toda su extensión la verdad del diligenciado del mandamiento sólo resulta que se mostró personalmente la cédula de citación a las personas que se citaban. No sólo no se entregó al peticionario Padilla copia del escrito estableciendo la apelación, que tiene el carácter de una demanda, sino que ni siquiera se dejó en su poder una copia de la citación.

Como sostiene la parte apelada en su alegato todo el derecho que pudo quizá tener la corte de paz fué el de citar nuevamente a Padilla para que expusiera las causas a virtud de las cuales no debía castigársele por desacato, pero nunca adquirió jurisdicción para dictar sentencia contra él despojándolo de su derecho a votar, derecho que le había sido reconocido por la Junta Insular de Elecciones después de una controversia sobre la materia.

La sección 32 de la Ley de Inscripciones y Elecciones de junio 25, 1919, tal como quedó enmendada por la Ley No. 1 de 18 de junio de 1924 (p. 15), en lo pertinente dice:

"En todos los casos de apelaciones de las decisiones de la Junta Insular de Elecciones, según se autoriza anteriormente en esta Sección, la corte municipal o el juzgado de paz señalará uno o más días consecutivos para las vistas de dichas apelaciones, y los jueces municipales o de paz en dicho día o días se consagrarán a la vista de

las mismas hasta oírlas todas debidamente, y en la vista de dichas apelaciones, las cortes ante las cuales fueren oídas tendrán el derecho y por la presente quedan facultadas para oír testigos, **y para** exigir y examinar los documentos y pruebas que juzgaren necesarios para poder llegar a una determinación sobre los hechos y la ley en esos casos; *Disponiéndose,* que dichos casos serán oídos de acuerdo con las reglas de evidencia y procedimientos judiciales que **rigen en** casos civiles; . . . . ''

Claro está que se trata de un procedimiento rápido, sumarísimo, pero ello no quiere decir que pueda condenarse a una persona sin saber siquiera que ha sido demandada, sin habérsele servido una copia fiel de la demanda, con sólo habérsele citado en forma tan confusa que más bien podía desprenderse que se le llamaba como testigo y no como parte en el procedimiento. El legislador tuvo buen cuidado de disponer, como hemos visto, expresamente en la ley electoral ''que dichos casos serán oídos de acuerdo con las reglas de evidencia y procedimientos judiciales que rigen en casos civiles.'' Ello admite, dadas las circunstancias especiales concurrentes, una reducción al límite de los términos, la mayor simplicidad posible en los procedimientos, una excesiva rapidez en las vistas y resoluciones, pero ello no puede admitir que se prescinda por completo de conceder su día en corte a la parte interesada.

Otras razones se aducen por la parte apelada en su alegato para sostener la sentencia recurrida, pero estimando que la expuesta es fundamental, prescindiremos de su estudio en gracia a la brevedad y al exceso de trabajo que pesa sobre esta corte.

[4] En cuanto al tercer error, limitando nuestro examen al diligenciado, no resulta la temeridad del demandado. Pudo éste actuar en la forma en que lo hizo de buena fe y no debió por tanto condenársele al pago de las costas. En este extremo debe revocarse la sentencia apelada.

*Por virtud de todo lo expuesto debe modificarse la sentencia apelada sustituyendo las palabras ''y se condena al*

*demandado al pago de las costas" por las siguientes: "sin especial condenación de costas", y así modificada debe confirmarse.*