SEBASTIÁN C. BANUCHI DE LA ROSA, ETC., peticionario, *v.* CORTE DE DISTRITO DE AGUADILLA, HON. F. GONZÁLEZ SUÁREZ, JUEZ, demandada.

Núm. 23.—*Sometido:* Octubre 28, 1944. *Resuelto:* Noviembre 2, 1944.

114

*Héctor González Blanes, Rafael A. González* y *J. Jiménez Aguayo,*
abogados de los peticionarios; *M. Velázquez Flores, Subprocurador
General,* abogado del juez demandado; *Samuel R. Quiñones,
Ángel Viera Martínez* y *Carlos del Toro Fernández,* abogados de
los interventores, recusadores en los procedimientos de exclusión
de electores de que se trata.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

La Junta Insular de Elecciones denegó las peticiones de
varios recusadores solicitando la exclusión de las listas de inscripción de más de ochocientos electores correspondientes, al
precinto electoral de Isabela. Habiéndose apelado en dichos
casos para ante la Corte de Paz de Isabela recayó sentencia
ordenando la exclusión de un gran número de dichos electores. Para revisar esta actuación cuatrocientos sesenta y dos
(462) electores afectados presentaron recurso de *certiorari*
ante la Corte de Distrito de Aguadilla. Dicha corte expidió
el auto, pero después de oír a las partes lo anuló y desestimó
la petición. Para revisar su actuación expedimos auto de certiorari, bajo la Ley núm. 32 de 1943 (pág. 85), a petición de
cuatrocientos cincuenta y tres (453) electores.

Dada la premura del tiempo (las elecciones tienen lugar
dentro de cinco días) nos limitamos a considerar y resolver
las cuestiones envueltas en el caso que, a nuestro juicio, son
fundamentales. Debemos hacer constar, además, con nuestra
censura, que la negligencia del taquígrafo de la Corte de Distrito de Aguadilla al no terminar la transcripción de la prueba

que debió enviarse a esta corte antes de la vista, dilató durante varios días esta decisión.

Aun cuando tanto la petición de certiorari clásico presentada ante la corte inferior, como la petición bajo la Ley 32 de 1943 ante esta corte, dejan mucho que desear en cuanto a la claridad y precisión de sus alegaciones, consideramos que la cuestión fundamental envuelta en este caso es al efecto de que las sentencias dictadas por la Corte de Paz de Isabela ordenando la exclusión de los peticionarios de las listas electorales son nulas, por haber actuado dicha corte sin jurisdicción por los motivos siguientes:

1. Porque las apelaciones en un número de casos fueron interpuestas por personas distintas a aquellas que actuaron como recusadores ante la Junta Insular de Elecciones.

2. Porque el Juez de Paz de Isabela, al inhibirse de conocer en un número de casos por estar emparentado con algunos de los recusadores apelantes, delegó ilegalmente en el Juez de Paz de Hatillo para que considerara y resolviera dichos casos actuando en la propia Corte de Paz de Isabela.

3. Porque los peticionarios no fueron notificados legalmente de las apelaciones establecidas por los recusadores contra la decisión de la Junta Insular de Elecciones; que tampoco fueron citados legalmente para las vistas señaladas ante la Corte de Paz y que a aquellos que comparecieron representados por abogados no se les permitió radicar su contestación ni presentar prueba para defenderse.

4. Porque los Jueces de Paz de Isabela y Hatillo resolvieron los casos sin que los recusadores apelantes presentaran prueba de clase alguna para sostener sus solicitudes de exclusión.

Para poder considerar y resolver estas cuestiones hemos tenido que invertir muchas horas en separar, en grupos adecuados, los cuatrocientos sesenta y un (461) expedientes de la Corte de Paz enviados como *return* tanto ante la corte inferior como ante esta corte. Lo primero que encontramos es que, a pesar de tratarse de cuatrocientos cincuenta y tres

(453) peticionarios, se han elevado diez (10) expedientes que se refieren a personas que no son peticionarios ante esta corte y por tanto no hemos considerado sus casos.[1] Por el contrario, no se han elevado los expedientes de tres peticionarios, a saber: el civil núm. 532, Juanita Piñero de Piñero, el civil núm. 670, María Román Mártir, y el civil núm. 732, Angel Nieves Pérez, y estos casos, tenemos que presumir, fueron resueltos por la corte inferior sin tener ante sí dichos expedientes. Aun cuando este hecho no ha sido alegado como error por los aquí peticionarios, surge de los autos originales ante nos. En cuanto a esos tres peticionarios es obvio que la corte inferior actuó sin jurisdicción al resolver tres casos que no tenía ante su consideración. Empero, la negligencia de dichos peticionarios al no actuar en debida forma para defender sus derechos ante la corte inferior convirtió en firme las decisiones de la Corte de Paz de Isabela en sus casos.

De los cuatro motivos alegados por los peticionarios para atacar la jurisdicción de la Corte de Paz de Isabela consideramos que el tercero es el más importante pues la primera cuestión planteada en el mismo afecta a todos los casos de los cuatrocientos cincuenta y tres (453) peticionarios.

Se alega que ellos no fueron notificados de las apelaciones ni citados legalmente para las vistas señaladas ante la Corte de Paz de Isabela.

Debemos hacer constar que el Licenciado J. Jiménez Aguayo al comparecer ante la Corte de Paz de Isabela el día

---

[1] Estos casos son los siguientes:
 1. Civil núm. 206, Francisco González Méndez.
 2. Civil núm. 343, Miguel Calero Aldarondo.
 3. Civil núm. 344, Aniceto Cordero Rosa.
 4. Civil núm. 576, Bárbara Calero Alfaro.
 5. Civil núm. 580, Consuelo Vélez Cordero.
 6. Civil núm. 710, Celestina Santiago Rosado.
 7. Civil núm. 712, María Santiago Gómez.
 8. Civil núm. 714, Miguel Vargas Valle.
 9. Civil núm. 716, Angela Vega Vélez.
 10. Civil núm. 744, Félix Aldarondo Ramos.

19 de julio de 1944, fecha señalada para la vista de los casos, hizo una moción verbal impugnando la jurisdicción de dicha corte y entre otros motivos se fundó en lo resuelto por esta corte en el caso de *Márquez* v. *Junta Insular de Elecciones,* 41 D.P.R. 1. Esto aparece de la resolución de dicha corte declarando sin lugar la moción que obra en los autos de los casos en que actuó el Juez Sr. L. Pratts Maldonado.

Sostienen los peticionarios que de acuerdo con la sección 32 de la Ley Electoral y lo resuelto en el caso de *Márquez* v. *Junta,* supra, ratificando la doctrina establecida en el de *Padilla* v. *Corte,* 35 D.P.R. 301, a ellos debió notificárseles las apelaciones establecidas por los recusadores y que la mera notificación constructiva deficiente que se les hizo del señalamiento de las vistas, no confirió jurisdicción a la Corte de Paz para actuar en estos casos.

En el caso de *Padilla* v. *Corte,* supra, esta corte interpretó el párrafo segundo de la sección 32 de la Ley Electoral según leía en el año 1924, en lo pertinente, así:

" 'En todos los casos de apelaciones de las decisiones de la Junta Insular de Elecciones, según se autoriza anteriormente en esta sección, la corte municipal o el juzgado de paz señalará uno o más días consecutivos para las vistas de dichas apelaciones, y los jueces municipales o de paz en dicho día o días se consagrarán a la vista de las mismas hasta oirlas todas debidamente, y en la vista de dichas apelaciones, las cortes ante las cuales fueren oídas tendrán el derecho y por la presente quedan facultadas para oir dichos asuntos de nuevo, y con esos fines, para citar y oir testigos, y para exigir y examinar los documentos y pruebas que juzgaren necesarios para poder llegar a una determinación sobre los hechos y la ley en esos casos; *Disponiéndose, que dichos casos serán oídos de acuerdo con las reglas de evidencia y procedimientos judiciales que rigen en casos civiles*; . . .' " (Bastardillas nuestras.)

Dicho caso de *Padilla,* supra, trataba de una apelación establecida, al igual que en los casos de autos, por el recusador, pues la Junta Insular de Elecciones había denegado la exclusión de la inscripción de Padilla. No se notificó al elector

de dicha apelación y sólo se le citó para comparecer como testigo, y esta corte dijo, a la página 306:

" . . . No sólo no se entregó al peticionario Padilla copia del escrito estableciendo la apelación, *que tiene el carácter de una demanda,* sino que ni siquiera se dejó en su poder una copia de la citación.

Como sostiene la parte apelada en su alegato todo el derecho que pudo quizá tener la corte de paz fué el de citar nuevamente a Padilla para que expusiera las causas a virtud de las cuales no debía castigársele por desacato, *pero nunca adquirió jurisdicción para dictar sentencia contra él despojándolo de su derecho a votar,* derecho que le había sido reconocido por la Junta Insular de Elecciones después de una controversia sobre la materia." (Bastardillas nuestras.)

Después de citarse la sección 32, supra, esta corte se expresó así a la página 307:

"Claro está que se trata de un procedimiento rápido, sumarísimo, *pero ello no quiere decir que pueda condenarse a una persona sin saber siquiera que ha sido demandada, sin habérsele servido una copia fiel de la demanda,* con sólo habérsele citado en forma tan confusa que más bien podía desprenderse que se le llamaba como testigo y no como parte en el procedimiento. El legislador tuvo buen cuidado de disponer, como hemos visto, expresamente en la ley electral 'que dichos casos serán oídos de acuerdo con las reglas de evidencia y procedimientos judiciales que rigen en casos civiles.' Ello admite, dadas las circunstancias especiales concurrentes, una reducción al límite de los términos, la mayor simplicidad posible en los procedimientos, una excesiva rapidez en las vistas y resoluciones, *pero ello no puede admitir que se prescinda por completo de conceder su día en corte a la parte interesada."* (Bastardillas nuestras.)

Esta doctrina fué ratificada en el caso de *Márquez* v. *Junta,* supra, en el que había envuelta una cuestión igual, diciéndose a las páginas 7 y 8 lo siguiente:

"Puede aquí afirmarse que, lejos de seguirse en ese procedimiento regla alguna de las de la ley procesal, han quedado prácticamente violadas todas las garantías que ella presta a un ciudadano para defenderse. Y no es ése el fin que persigue la Ley Electoral, cuando dispone, en su artículo 32, que los casos de apelación 'serán oídos de acuerdo con las reglas de evidencia y procedimientos judiciales que rigen en casos civiles'."

❊          ❊          ❊          ❊          ❊          ❊          ❊

"A nuestro entender, no hubo en este caso un emplazamiento formal a las partes. Se notificó a los partidos políticos, no a los electores interesados. Y así podría quizá decirse que a esos juicios fueron los partidos, no los electores de cuya exclusión se trataba."

Ahora bien, en el año 1936 se enmendó el segundo párrafo de la sección 32 de la Ley Electoral citada, adicionándosele lo siguiente:

"Inmediatamente que la Corte Municipal o de Paz reciba la documentación que forma el legajo de la apelación, procederá a señalar fecha para la vista de los casos, y fijará, con cinco (5) días por lo menos de antelación a la fecha en que haya de verse el caso, en sitio visible en dicha Corte de Paz o Municipal y en una de las oficinas de correo del precinto correspondiente, un aviso dando conocimiento al público y a los interesados de la fecha y hora que han sido señalados para la vista de los respectivos casos. Tal aviso comprenderá además el nombre, circunstancias personales y dirección del elector de cuya inscripción se trate, el nombre, circunstancias personales y dirección del que jurare la exclusión y los fundamentos de ésta, y *tal fijación constituirá notificación suficiente para que la corte adquiera jurisdicción sobre las partes y sobre el caso.*" (Bastardillas nuestras.)

La cuestión a resolver es si el procedimiento establecido por la Legislatura para la notificación de las citaciones para las *vistas* de las apelaciones en estos casos electorales ha tenido el efecto de eliminar el requisito previo de emplazar o notificar al elector de la apelación establecida por el recusador contra la decisión de la Junta Insular de Elecciones, requisito que en los casos de *Padilla* y *Márquez,* supra, se solvió era jurisdiccional. Se resolvió en dichos casos que ese requisito debía cumplirse a virtud del *Disponiéndose* contenido en el párrafo segundo de la sección 32, supra, según leía en el año 1924 al efecto de que: "dichos casos serán oídos de acuerdo con las reglas de evidencia y procedimientos judiciales que rigen en casos civiles." Este *Disponiéndose* subsiste en la sección 32 no obstante la enmienda por adición hecha en el año 1936. La frase final de dicho párrafo segundo al efecto de que la fijación de los avisos para las vistas en la corte y en el correo "constituirán notificación suficiente para

que la corte adquiera jurisdicción sobre las partes y sobre el caso,'' sólo puede referirse a conceder jurisdicción para celebrar las vistas de los casos si se ha cumplido con dicho requisito de citación para las mismas y siempre que previamente se haya cumplido con el requisito jurisdiccional de haber notificado al elector el escrito de apelación. Tanto el *Disponiéndose* a que nos hemos referido como esta frase final, pueden subsistir y complementarse, si hemos de dar efectividad a la intención legislativa en tal forma, que nuestra interpretación sostenga la validez del estatuto. Una interpretación distinta podría quizás llevarnos a concluir que la frase final referida constituiría una violación del debido procedimiento de ley garantizado por nuestra Carta Orgánica. Si entre dos interpretaciones una es cónsona con la validez de la ley y también tiene el efecto de armonizar dos disposiciones aparentemente en conflicto, a ella debemos atemperarnos.

Somos de opinión que la doctrina sostenida en los casos de *Padilla* y *Márquez,* supra, debe subsistir al interpertar el párrafo segundo de la sección 32 de la Ley Electoral. El elector cuya inscripción ha sido declarada válida por la Junta Insular de Elecciones ha adquirido un derecho presuntivo al sufragio del cual no debe privársle a través de una apelación de la cual no tiene conocimiento por no haber sido notificado de su interposición en forma alguna. El mero hecho de que la citación para la vista de su caso pueda hacerse, constructivamente, cumpliéndose con los requisitos que especifica la ley en cuanto a la fijación de un aviso en la corte y en el correo de su pueblo, no equivale al cumplimiento mínimo del debido procedimiento de ley en cuanto a ser emplazado en alguna forma del escrito de apelación.[2]

(2)La interpretación dada por el Juez Asociado, Sr. De Jesús a la sección 27 de la Ley Electoral, en su opinión en el caso de *Partido Popular* v. *Junta Insular de Elecciones,* 63 D.P.R. 296, 312–13, no está en conflicto con la conclusión unánime a que ha llegado la corte en el presente caso. Dicha opinión es claramente distinguible. Se trataba allí de un caso en el cual los interesados nunca fueron aceptados por la Junta Insular de Elecciones como electores debidamente inscritos ni incluídos en las listas de inscripciones. Del hecho de si sus nombres habían sido o no incluídos en la lista de electores inscritos sostuvo el

No habiendo sido emplazados los peticionarios en forma legal, la Corte de Paz de Isabela nunca adquirió jurisdicción en sus casos, excepto en aquellos en los cuales los peticionarios hicieron una comparecencia general, bien personalmente o representados por abogado y se sometieron a la jurisdicción de esta corte. El número de estos casos asciende a veintisiete (27).

█ Ahora bien, en estos veintisiete casos es preciso determinar si la Corte de Paz de Isabela, por alguno de los otros motivos alegados, actuó sin jurisdicción.

En tres de ellos, el núm. 353 de Sebastián Banuchi de la Rosa, el núm. 401 de Saturnina Beníquez Montilla y el núm. 545 de Margarita Quiñones Quiñones, aparecen las sentencias dictadas por el Sr. Juan Ramón Cruz (que es el Juez de Paz de Hatillo) pero quien actuó como Juez de Paz de Isabela (así aparece firmando las sentencias en ciento ochenta y ocho (188) casos entre los cuales se encuentran estos tres) el día 20 de julio de 1944, al mismo tiempo que el juez en propiedad de dicha corte Sr. Luis Pratts Maldonado continuaba interviniendo en los demás casos señalados para dicho día.

Los peticionarios alegaron en la corte inferior y alegan y sostienen ante esta corte que en los casos en que intervino el Juez de Paz de Hatillo, actuando como Juez de Paz de Isabela, las sentencias dictadas son nulas por falta de jurisdicción.

La cuestión surgió ante la Corte de Paz de Isabela en la siguiente forma. En estos casos aparecían como recusadores apelantes (en dos como apelados) los señores Claudino Pratts

---

Juez Asociado, Sr. de Jesús, podían enterarse por las listas que se exhiben al público o por las del Comité Local de su partido en el precinto de su residencia. El procedimiento establecido en la sección 27 de la Ley Electoral objeto de interpretación en el mencionado caso, no tiene relación alguna con un procedimiento judicial en el cual se exija, como se hace en la sección 32, supra, que se cumpla con ''los procedimientos judiciales que rigen en casos civiles''. Nuestra opinión personal en dicho caso, con la cual concurrió el Juez Sr. Snyder, fué contraria a la del Juez Asociado Sr. De Jesús, pues sostuvimos que, aún bajo la sección 27, la notificación por medio de listas expuestas al público era insuficiente.

Maldonado y Adrián Girald Maldonado. Habiéndose alegado que estos recusadores estaban emparentados dentro del seguno y cuarto grado de consanguinidad con el Juez de Paz de Isabela, Sr. Luis Pratts Maldonado, se solicitó su inhibición, a lo que accedió dicho juez, dictando una resolución el 19 de julio de 1944, cuya parte dispositiva dice así:

"VISTO el inciso 2do. del artículo 23 del Código de Enjuiciamiento Civil, declaro con lugar dicha moción, me inhibo del conocimiento de todos los casos apelados y señalados para ser vistos los días 19 y 20 de julio, 1944, en que figuren como recusadores y apelantes dichos Claudino Pratts Maldonado y Adrián Girald Maldonado, previniendo a las partes y a sus abogados que convengan y estipulen el Tribunal a que deban remitirse tales apelaciones a fin de que las vea, oiga, juzgue y falle, sin alterarse los señalamientos practicados."

En la misma fecha dicho juez dictó una orden que copiada a la letra dice:

"Siendo las 7½ de la noche y constituída esta Corte en sesión pública para continuar la vista de las apelaciones de casos electorales previamente señalados.

"POR CUANTO el Juez de la misma ha tenido informes de que los promoventes de la inhibición a que se refiere su resolución inhibitoria de esta misma fecha, no se avienen al traslado de los casos comprendidos en la inhibición al Juez de Paz de Quebradillas, como les propuso la parte contraria por el abogado señor Viera y tiene informes además de que no es posible que lleguen a acuerdo o estipulación alguna.

"POR CUANTO dicho Juez de Paz de Quebradillas ha manifestado al Juez proveyente que en muchos de los casos comprendidos en la inhibición se mencionan como partes parientes suyos dentro del 4to. grado de consanguinidad.

"POR TANTO, en uso de las facultades que concede al Juez de esta Corte el artículo 84 del Cód. de Enjuiciamiento Civil, ordena el traslado de todas las apelaciones electorales ante él y en que figuren como recusadores y apelantes los señores Claudio Pratts Maldonado y Adrián Girald Maldonado al Hon. Juan Ramón Cruz, Juez de Paz de Hatillo, quien deberá continuar el procedimiento de las mismas viéndolas, oyéndolas, juzgándolas y fallándolas, en substitución del Juez inhibido, dentro de la fecha que corresponde a sus respectivos señalamientos."

Por último aparece que dicho juez en la misma fecha y desde Isabela dirigió una carta al Sr. Juan Ramón Cruz, Juez de Paz de Hatillo, en los siguientes términos:

"Hon. Juan Ramón Cruz,
Juez de Paz de Hatillo.

Distinguido compañero:

"Habiéndome inhibido del conocimiento de todas las apelaciones electorales venidas ante mí y en las que figuren como recusadores y apelantes los señores Claudio Pratts Maldonado y Adrián Girald Maldonado, por orden de esta fecha he dispuesto el traslado de dichas apelaciones a Ud. para que las resuelva de acuerdo con la Ley y los hechos.

"De la vista de esos casos trasladados están prevenidas las partes o sus abogados que se celebrarán ante Ud. en el edificio de la Alcaldía de ese pueblo a la hora, etc. de antemano fijada.

"Todos los expedientes de los casos objeto del traslado, están a su disposición en mi oficina.

"Gracias por su cooperación, le ofrezco mi recíproca para casos análogos y me suscribo de Ud., atentamente (Fdo.) Luis Pratts Maldonado, Juez de Paz de Isabela, Puerto Rico."

(Todos estos documentos obràn en el expediente del caso núm. 126, Claudino Pratts Maldonado, apelante v. Monserrate Cruz Acevedo, apelado.)

A virtud de la orden, resolución y carta antes transcritas, fué que el Juez de Paz de Hatillo actuó como Juez de Paz de Isabela.

La corte inferior resolvió que el artículo 84 del Código de Enjuiciamiento Civil[3] en que se basó el Juez de Paz para ordenar el traslado, no era aplicable a estos casos.

Sostuvo, además, que el artículo primero de la "Ley proveyendo el Nombramiento de Jueces Especiales para los Tri-

---

[3] "Artículo 84.—(398 Cal.) Si un pleito o procedimiento se iniciare o estuviere pendiente ante una corte, y el juez de ésta estuviere incapacitado para actuar, o si por cualquier motivo la corte ordenare un cambio en el lugar de la vista, deberá aquél trasladarse a un tribunal convenido por las partes mediante estipulación por escrito o celebrada ante la corte y consignada en su libro de actas; y si no llegasen a ponerse de acuerdo, entonces se trasladará el asunto a la corte más cercana en que no exista el mismo inconveniente o la causa que originó el traslado, verificándose ésto a otra corte de distrito."

bunales Municipales, en ciertos casos, aprobada en 9 de mayo de 1905 (según enmendada por la ley de 11 de marzo de 1908)'' y los artículos 16 y 17 del Código de Enjuiciamiento Criminal, los cuales copiamos al margen(⁴) eran los aplicables y que podría considerarse ''que el Juez de Paz de Hatillo (sic) cumplió la ley citada o sea el artículo 17 predicho y hay que presumir que se actuó dentro de dichas atribuciones.''

Resalta la incongruencia de la forzada conclusión de la corte inferior ante la realidad de los hechos en cuanto a la forma en que actuó el Juez de Paz de Isabela (no el de Hatillo) demostrada por la resolución, orden y carta citadas anteriormente. La presunción que establece el apartado 16 del artículo 102 de la Ley de Evidencia (Artículo 464 Código de Enjuiciamiento Civil) al efecto de que ''un tribunal o juez obrando como tal . . . se hallaba en el ejercicio legal de su jurisdicción'' quedó controvertida en estos casos por las constancias del propio juez en los autos.

Asumiendo que el artículo 84, supra, no sea aplicable a los procedimientos ante las cortes de paz, es obvio que el juez de paz en ningún momento dió cumplimiento a las disposiciones del artículo 1 de la ley de 1905, según enmendado en 1908, supra, y tampoco al artículo 17 del Código de Enjuiciamiento Criminal. Nada hay en los expedientes originales de la Corte de Paz de Isabela que demuestre que el Gobernador

---

(⁴)''Artículo 1.—Cuando un juez de una corte municipal se haya inhibido, y no pueda conocer de un determinado asunto o asuntos pendientes ante la corte, deberá inmediatamente, por telégrafo u otro conducto, comunicar el hecho al Gobernador de Puerto Rico; y en tal caso, el Gobernador puede nombrar un juez especial capacitado, o comisionar a cualquier otro juez municipal para que tramite y resuelva dicho asunto o asuntos.''

''Artículo 16.—Un juez de paz podrá dirigir la tramitación de los procesos pendientes ante otro juez de paz del mismo distrito o ciudad, siempre que se halle éste impedido de actuar, ora sea por enfermedad o por cualquiera otra causa. En tales casos, las actuaciones llevadas a cabo por el juez de paz sustituto serán anotadas en el registro de juez de paz por quien actúa.''

''Artículo 17.—(Substituído por la Ley Reorganizando el Sistema Judicial, de 10 de marzo de 1904.)—(Enmendado por la Ley núm. 57 de 17 de junio de 1919.)—Sección 1.—El término del cargo de juez de paz será el de cuatro años. Los jueces de paz podrán nombrar sus sustitutos mediante la aprobación del Attorney General.''

de Puerto Rico nombrara al Juez de Paz de Hatillo para actuar como Juez de Paz de Isabela en aquellos casos en que estaba incapacitado para actuar el Juez de Isabela y tampoco hay constancia alguna de que el Procurador General aprobara el nombramiento del Juez de Paz de Hatillo como sustituto del de Isabela y que en esa forma se cumpliera con los requisitos indispensables para hacer válido el nombramiento del Juez de Paz de Hatillo de acuerdo con la ley y los artículos citados.

Ahora bien, asumiendo que el artículo 84, supra, sea aplicable a los procedimientos ante las cortes de paz, es obvio también que en los casos de autos tampoco se cumplió con sus preceptos. Los casos no fueron trasladados a la Corte de Paz de Hatillo sino que el Juez de Paz de Hatillo por orden del Juez de Paz de Isabela se trasladó a la Corte de Paz de Isabela y actuó al mismo tiempo que el juez de esta corte. Tenemos, por tanto, el caso anómalo de que durante la tramitación de estos casos la Corte de Paz de Isabela estaba presidida por dos jueces a un mismo tiempo sin haberse cumplido con los requisitos legales para que la actuación del juez sustituto pudiera ser válida.

Desde cualquier punto legal que se enfoque la actuación del Juez de Paz de Hatillo en estos casos, sólo puede llegarse a una conclusión y es que actuó sin jurisdicción como Juez de Paz de Isabela y que sus sentencias en los ciento ochenta y ocho casos son completamente nulas e ineficaces. Estando los tres casos de Sebastián Banuchi de la Rosa, Saturnina Beníquez Montilla y Margarita Quiñones Quiñones, comprendidos dentro de los ciento ochenta y ocho antes mencionados las sentencias dictadas en ellos por el Juez de Paz de Hatillo, son nulas.

■■ Tenemos, por lo tanto, que nos resta por considerar la situación legal existente en veinticuatro (24) casos en los cuales las partes comparecieron bien personalmente o por abogado. Entre estos casos hay tres (3) a saber, el Civil Núm. 377 de Basiliso Román Martínez, el Civil Núm. 399 de

Luis Valle Cancel y el Civil Núm. 765 de Manuel Sánchez Sánchez, en los cuales aparece de los autos que las apelaciones fueron interpuestas por personas distintas a aquellas que actuaron de recusadores ante la Junta Insular de Elecciones.(⁵)

La sección 32 de la Ley Electoral, según fué enmendada por la Ley núm. 3 aprobada en 29 de junio de 1936 ((2) pág. 9), en su primer párrafo(⁶) dispone expresamente que sólo dos personas pueden apelar de una decisión de la Junta Insular de Elecciones, 1ro. el elector cuya exclusión haya sido ordenada y 2do. la persona cuya petición de exclusión de una inscripción hubiera sido rechazada o denegada. La cuestión envuelta no .es nueva en esta jurisdicción. En el caso de *Ortiz* v. *Corte,* 53 D.P.R. 38, la resolvimos diciendo a la página 46, lo siguiente:

"Ha pasado ya a la categoría de principio elemental de derecho el de que el recurso de apelación es un derecho estatutario, que no existe a menos que sea expresa y taxativamente concedido por el estatuto. De acuerdo con la sección 32, supra, de las resoluciones de la Junta Insular de Elecciones, decretando o denegando la exclusión de las listas de un elector, solamente pueden apelar el elector excluído o el recusador cuya petición de exclusión fué desestimada, según el caso. No puede, por consiguiente, apelar ninguna persona extraña al procedimiento de exclusión, como lo era el apelante Modesto Vázquez Flores, quien no fué la persona que juró y presentó las peticiones para la exclusión de los electores peticionarios. Las resoluciones dictadas por la Junta Insular de Elecciones, rechazando las peticiones de exclusión suscritas por los recusadores Pedro Martínez,

---

(⁵)Esta misma situación surge en otros treinta y dos casos cuyas sentencias han quedado anuladas por alguno o ambos de los dos motivos jurisdiccionales discutidos y resueltos anteriormente. ✓

(⁶)Sección 32.—(*Según fué enmendada por la Ley núm. 3, aprobada en 29 de junio de 1936.*)—Toda persona cuya cancelación de inscripción como elector se hubiere ordenado por la Junta Insular de Elecciones y toda persona cuya petición de exclusión de una inscripción hubiere sido rechazada o denegada por la Junta Insular de Elecciones, podrá apelar de la resolución de dicha junta ante la corte municipal del municipio a que correspondiere dicha lista de inscripciones, si existiere una corte municipal en dicho municipio, y si no existiere corte municipal alguna en dicho municipio, dicha apelación deberá llevarse a la corte de paz del mismo.

José Cáceres y Mariano Lebrón, se convirtieron en firmes y definitivas al no ser recurridas por dichos recusadores. Los escritos de apelación suscritos por Modesto Vázquez Flores por ser legalmente nulos no confirieron jurisdicción a la Corte de Paz de Las Piedras. Las sentencias dictadas por dicha corte, revocando las resoluciones de la Junta Insular de Elecciones, fueron dictadas sin jurisdicción y son legalmente nulas.''

Arguyen los interventores, sin embargo, que en cuanto al caso en que intervino el recusador Antonio Bonilla Nieves, éste falleció *antes* de haber sido resueltas las solicitudes de exclusión por la Junta Insular de Elecciones y que el apelante Miguel A. Ramos Díaz, es otro elector de Isabela y le constaban los mismos hechos que al recusador original y así lo hizo constar en un *affidavit*, y que por tanto, no erró la corte inferior al resolver que la corte de paz aplicó bien el artículo 7 del Código Civil([7]) por no haber provisto el legislador el procedimiento en un caso como éste.

Las disposiciones del artículo 7 del Código Civil no son aplicables a esta situación. Como dijimos en el caso de *Ortiz* y tenemos que repetir, es elemental en derecho que el recurso de apelación es de carácter estatutario y no puede existir o reconocerse cuando la ley taxativamente no lo concede. Menos aún puede aceptarse que cada corte a su discreción conceda o no ese derecho, según le convenga a una persona alegar, aunque sea bajo juramento, que está en las mismas condiciones que aquella otra ya fallecida, a quien el estatuto concedió ese derecho. La laguna que existe en la Ley Electoral al no proveer quién podrá apelar cuando el recusador ha fallecido sólo puede ser llenada por la Legislatura.

Por lo expuesto resolvemos que la corte inferior erró al no resolver que la Corte de Paz de Isabela actuó sin jurisdic-

([7])''Artículo 7.—El tribunal que rehuse fallar a pretexto de silencio, obscuridad o insuficiencia de la ley, o por cualquier otro motivo, incurrirá en responsabilidad.

''Cuando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos.

128.

ción en los tres casos de Basiliso Román Martínez, Luis Valle Cancel y Manuel Sánchez Sánchez, en los cuales las apelaciones fueron interpuestas por personas distintas a aquellas que actuaron de recusadores.(8)

En los veintiún (21) casos que aun nos quedan por considerar la única cuestión jurisdiccional de las alegadas por los peticionarios que debemos resolver si tiene méritos, es aquella que se refiere al hecho de que a los peticionarios que comparecieron representados por abogado, no se les permitió radicar su contestación ni presentar prueba para defenderse.

De los expedientes originales de la Corte de Paz de Isabela, en once de estos casos aparece que el elector apelado radicó una moción para desestimar la petición de exclusión radicada por el recusador apelante y una contestación a dicha petición, ambas suscritas por su abogado Lic. J. Jiménez Aguayo y en un caso radicó la moción mencionada. Al pie de todas las mociones y contestaciones aparece lo siguiente: "Sin lugar. Julio 19, 1944. Luis Pratts Maldonado, Juez de Paz de Isabela", o bien simplemente "Sin lugar".

En los nueve casos restantes no hay alegación escrita alguna radicada pero en todas las sentencias dictadas en este grupo de veintiún casos se hace constar que se presentó prueba testifical en algunos y en otros testifical y documental. Del examen que hemos hecho de los expedientes en estos casos no aparece prueba documental alguna ya que del récord de la Junta Insular de Elecciones enviado por el Superintendente General de Elecciones a la Corte en cumplimiento del párrafo quinto de la sección 32 de la Ley Electoral no puede considerarse que constituya prueba documental.

Ahora bien, en cuanto a la prueba testifical, alegaron los peticionarios, tanto en la corte inferior como en esta corte, que la corte de paz no les permitió presentar dicha prueba y que por el contrario los casos fueron resueltos sin presentarse prueba de clase alguna, y para sostener esta alegación tra-

---

(8) Es obvio que las sentencias en los otros treinta y dos casos, a que nos referimos en la nota 5 son nulas por este motivo adicional.

taron de presentar prueba testifical y documental que no les fué admitida por la corte inferior bajo la conocida regla de que en un certiorari clásico no es admisible prueba *aliunde* al *return*.

No nos explicamos por qué es que en un reducido número de casos es que aparece que los electores comparecieron representados por abogado y en más de cuatrocientos no hubo comparecencia ni personal ni por representación y así se hace constar en las sentencias. El hecho es que en estos veintiún casos nos confrontamos con documentos oficiales—las mociones y contestaciones—que tienden a demostrar que los electores comparecieron, sometiéndose así a la jurisdicción de la corte de paz, y las sentencias que expresamente dicen que ofrecieron prueba testifical. Nada hay en la Ley Electoral que obligara a los electores a recurrir al procedimiento de certiorari ante la corte inferior para revisar las sentencias de la corte de paz. Pudieron haber apelado, de acuerdo con el *disponiéndose,* de la sección 32 supra, y en dichas apelaciones haber presentado la prueba que consideraban pertinente. No debe entenderse que resolvemos que el certiorari no fuera el único remedio apropiado al alcance de los peticionarios. Empero los hechos que motivaron la selección del recurso de certiorari en lugar del de apelación no están ante nos pues la petición radicada en la corte inferior no los expone y por tanto no creemos que la corte inferior erró al excluir la prueba *aliunde* bajo las circunstancias de este caso. No empece la duda que podamos tener, debido a las circunstancias concurrentes en la totalidad de los casos, en cuanto a la veracidad de lo que se hizo constar en las sentencias en estos veintiún casos, somos de opinión que de los expedientes y de las sentencias aparece que los peticionarios en estos casos se sometieron a la jurisdicción de la corte de paz. Estos peticionarios son los siguientes: 289–Juan Acevedo Soto; 292–Basilio Muñiz Morales; 295–Gregoria Rodríguez Quiles; 296–Luis Felipe Salas González; 298–Neftalí Barreto de la Rosa; 299– Julio de la Rosa Galván; 308–Anastasio Alers Vendrell;

310–Jenaro Rodríguez Ortiz; 345–Eduardo Morales Ramos; 347–Monserrate Colón Román; 349–Pedro Gutiérrez Román; 350–Ramona López de Vega; 361–Rubén Aldarondo Ferrer; 362–Antonio Arce Chico; 363–Mariano Barreto Alfaro; 365–Pablo Ferrer Aldarondo; 366–Víctor Ferrer Aldarondo; 368–Félix López Camacho; 371–Leopoldo Millet López; 372–María Cristina Millet y 386–Carmen Vargas Medina.

*Por todo lo expuesto, preciso es concluir que la sentencia dictada por la Corte de Distrito de Aguadilla el 4 de octubre de 1944 en el caso número 16810 de Sebastián C. Banuchi de la Rosa v. Corte de Paz de Isabela, debe ser anulada, excepto en tanto en cuanto ella se refiere a los veintiún casos que acabamos de especificar y a los tres casos cuyos records no figuran incluídos en el return (véase pág. 116 ante) y como consecuencia se anulan las sentencias dictadas por la Corte de Paz de Isabela presidida por los señores Luis Pratts Maldonado y Juan Ramón Cruz, en los cuatrocientos veintinueve (429) casos de los peticionarios restantes (los cuales se especifican en una lista adjunta), debiendo notificarse inmediatamente la sentencia en este caso además de a la corte inferior, a la Junta Insular de Elecciones para que pueda tomar las medidas pertinentes con el fin de garantizar que dichos peticionarios puedan ejercitar su derecho al sufragio en estas elecciones.*